*J. H. Dorsey,* for defendants.

WALNUT CREEK MILLING CO. *v.* SMITH BROTHERS CO.

No. 9497.   FEBRUARY 14, 1934.

342

Wright, Jackson & McClure, for plaintiff.

W. Inman Curry and W. M. & Henry G. Howard, for defendant.

ATKINSON, J. ■ The first question propounded by the Court of Appeals follows: "Where a contract for the purchase and sale of a specified quantity of flour, described and identified only by the trade-name or brand of 'Snoflour,' was entered upon in writing, is such a contract ambiguous to the extent that in a suit thereon the vendee will be permitted to show that according to the understanding between the parties, not expressed in the writing, the term 'Snoflour' contemplated a grade of flour equal in all respects to another brand of flour known as the 'Elberta' brand, with which the vendee was familiar? See *Dover* v. *Iroquois Mfg. Co.,* 30 *Ga. App.* 135 [117 S. E. 109]; *Porter* v. *Sterling Products Co.,* 40 *Ga. App.* 522 (2) [150 S. E. 457]; *Hartwell Grocery Co.* v. *Mountain City Mill Co.,* 8 *Ga. App.* 727 [70 S. E. 48]." In the case last cited it was held: "Parol evidence is admissible to identify the subject-matter of a written contract, where the same is ambiguous, notwithstanding that the contract recites that it contains all the agreements that are to be binding upon the parties." It appeared that the plaintiff sold flour through a traveling salesman. Written memoranda were made showing the sale and the terms thereof. The writing called for so many sacks of "W. than snow," and so many sacks of "St. Elmo." The question was whether in a suit for the purchase-price the defendant could plead and prove that when the contract was made the traveling salesman represented that "Whiter than snow" was the name of a full patent flour, and that "St. Elmo" was a standard half patent, and that the flour shipped did not come up in grade to these representations. In the opinion Powell, J., said, in part: "There is a difference between admitting parol evidence to contradict or to vary the terms of a written contract, or to set up new and distinct terms not expressed in the contract, and admitting parol evidence to identify the subject-matter of the contract or to explain ambiguous terms in it. . . But in this case we have a contract which does not describe its subject-matter in such language that the court can know without the aid of parol testimony what it means. The contract called for so many sacks of 'W. than snow' and for so many sacks of 'St. Elmo.' These words are arbitrary names, the meaning of which is unintelligible

to the court without the aid of parol evidence. They are words which carry with them certainty of meaning only through the application of the maxim, 'that is certain which can be made certain.' They are ambiguous when standing alone; hence, before the court could give either party any relief against the other as to any matter growing out of the contract and involving an understanding of its terms, it would be necessary that the meaning of these terms be disclosed to the court. If the writing itself, or if other writings contemporaneously executed, disclosed this meaning, it would be the duty of the court, ordinarily, to look to these writings, rather than to oral proof to find this meaning. But since there are no writings giving this meaning, and since the court can not give either to the plaintiff or to the defendant any relief under the contract until the meaning is known, it becomes necessary to look elsewhere for the meaning. Since the words are arbitrarily used, it is the duty of the court to find out what they meant to the parties when the contract was made, and we know of no fairer way of determining the intention of the parties in using this language than to find out what one said to the other when the contract was made; and this is what the defendant attempted to show and what the court refused to allow it to show. The defendant was manifestly buying flour, and not a name. It would not be reasonable to say that the parties intended that the plaintiff could ship out any grade of flour in sacks branded 'Whiter than snow' and 'St. Elmo,' and comply with its contract. The intention of the parties, as manifested by the written contract itself, was that flour of a certain grade or grades, which they in the contract used the words 'W. than snow' and 'St. Elmo' to represent, should be shipped out; and the burden was on the plaintiff to show that it had shipped not only flour branded with these names, but flour actually coming up to these grades which the names were intended to represent. It is true that by reason of the application of a different principle of law the plaintiff was enabled to make a prima facie case by showing that the defendant had accepted delivery of the flour, thus raising a prima facie, and therefore rebuttable, presumption that the flour shipped was 'St. Elmo' and 'Whiter than snow' in grade as well as in name. But just as the court in the first instance should have allowed the plaintiff to prove that this flour which was shipped was of the grade represented by the names 'Whiter than snow' and 'St. Elmo,' if it

had been necessary for the plaintiff to do so in order to make out a case, likewise it was the duty of the court to let the defendant show, when the burden of proof had been cast upon it by reason of the presumption just mentioned, that the flour did not come up to these grades. To allow the defendant to show what the plaintiff's salesman told the defendant these terms stood for in the contract is not to set up any new or outside verbal agreement of this salesman, in contradiction or variance of the contract, but is merely to aid the court in carrying out the identical written contract, according to its very word and letter, by using the oral negotiations only to the extent of ascertaining what these words and letters (ambiguous and unintelligible in themselves) really mean."

The principle announced was applied in *Dover* v. *Iroquois Mfg. Co.,* supra, where it was held: "'Where a salesman takes a written order for a barrel of adamite, weighing 600 pounds, at 13 cents per pound, and there is no further description of the subject-matter of the sale in the order, and it contains no warranties, and suit is brought for the purchase-price of the adamite, weighing 600 pounds, at 13 cents per pound, under proper pleadings the defendant should be allowed to prove that the salesman told the purchaser that 'adamite was a kind of stuff that would stop leaks;' that it 'would stop leaks on a house;' and that he (the purchaser) tried it and it would not stop leaks, and that it was wholly unfit for this purpose. (a) 'Parol evidence is admissible for the purpose of applying the terms of the written contract to the subject-matter and removing or explaining any uncertainty or ambiguity which arises from such application.' *State Historical Asso.* v. *Silverman,* 6 *Ga. App.* 560 (2) (65 S. E. 296)." The opinion in that case concluded with the statement: "In *Roebling's Sons Co.* v. *Southern Power Co.,* 142 *Ga.* 482 (83 S. E. 138, L. R. A. 1915B, 900), the Supreme Court quoted with approval the following from Carleton *v.* Lombard, Ayres & Co., 149 N. Y. 137 (43 N. E. 422) : 'The plaintiffs were entitled to something more than the mere semblance or shadow of the thing designated in the contract. They were entitled to the thing itself, with all the essential qualities that rendered it valuable as an article of commerce, and free from such latent defects as would render it unmerchantable. . . It frequently happens, in large transactions, that the article which is the subject of the contract is described by some vague generic word, which, taken strictly

and literally, may be satisfied by a worthless or defective article. In such cases the words may mean more than their bare definition or literal meaning would imply, and impose upon the seller an obligation to furnish, not only the thing mentioned in the contract, but a merchantable article of that name.' "

In *Porter* v. *Sterling Products Co.*, supra, it was said: "This was a suit on an open account, to recover the purchase-price of a certain amount of 'Plastic Veneer' (a roofing paint). The defendant in his answer admitted purchasing and receiving the material, but pleaded the breach of an express warranty, the breach of an implied warranty, and fraud in the procurement of the contract of sale. Upon the trial no evidence was adduced which would have authorized a finding that the plaintiff expressly warranted the goods, or that he or his agent was guilty of fraud in the procurement of the contract. The court, therefore, properly submitted to the jury, as the sole issue, the question whether there was the breach of an implied warranty by the plaintiff. . . In the written contract of sale signed by the defendant were the following words: 'No representation, agreement or promise of the salesman (not appearing on the original of this order), whether verbal or in writing, shall be valid, except when confirmed in writing by the company.' The defendant introduced, without objection, evidence as to verbal representations made by the plaintiff's salesman, but there was no evidence that those representations were ever confirmed in writing by the company. Conceding that the name of the article 'Plastic Veneer,' as used in the written contract, is an ambiguous and uncertain term which does not of itself disclose the character of the material, parol evidence was admissible, not to contradict, add to, or vary the terms of the written contract, but to identify the subject-matter thereof, and to explain what the ambiguous term 'Plastic Veneer' meant. . . Parol evidence identifying and explaining the subject-matter of the contract was admitted, but such evidence, under all the facts of the case, was not legally sufficient to vary the terms of the written contract and to establish an express warranty on the part of the plaintiff, or to show fraud in the procurement of the contract."

The reasoning above quoted from *Hartwell Grocery Co.* v. *Mountain City Mill Co.*, and *Dover* v. *Iroquois Manufacturing Co.*, is sound and applicable to the instant case. It comports with the

ruling of this court in *Pryor* v. *Ludden & Bales Southern Music House,* 134 *Ga.* 288 (67 S. E. 654, 28 L. R. A. (N. S.) 267), involving the same principle, where it was said: "If the writing shows on its face a definite and complete contract between the parties, parol evidence will not be received to vary, modify, or contradict its terms. The rule does not apply to cases where the instrument shows incompleteness on its face, and parol evidence is allowed to show an agreement referable to the incompleteness when not inharmonious with the writing. The question in such cases is whether there is a vacuum to be filled." It comports also with *Bond* v. *Perrin,* 145 *Ga.* 200 (6) (88 S. E. 954). It also comports with *LaGrange Female College* v. *Cary,* 168 *Ga.* 291 (147 S. E. 390), in which a different result was attained, based on a different form of contract which "appears to be complete and unambiguous." It comports also with the statement in *Americus Grocery Co.* v. *Brackett,* 119 *Ga.* 489 (46 S. E. 657), by Lamar, J.: "Bargain and sale of a chattel of a particular description imports a warranty that the article sold is of that description. *Miller* v. *Moore,* 83 *Ga.* 684 (10 S. E. 360, 20 Am. St. R. 329); Civil Code, § 3558. It was for the jury to decide whether 'Texas red rust-proof seed oats' described a specific variety, regardless of where they were raised, as 'Irish' potatoes include those raised outside of Ireland; or whether the trade meaning included those grown in the State of Texas, deriving their special value from the character of the soil and climate." It comports also with the statement in *Martin* v. *Moore,* 63 *Ga.* 531 (2), by Bleckley, J.: "The written contract signed by the defendant, being in relation to a fertilizer 'known as the W. & C. Superphosphate, manufactured by the New Jersey Chemical Company,' a plea that the defendant believed and was assured that he was getting a genuine article of Watson & Clark's guano fertilizer, with no averment that there was any fraud or mistake in the writing, or that Watson & Clark's guano fertilizer was the same as that known as the W. & C. Superphosphate, manufactured by the New Jersey Chemical Company, is an attempt to set up a parol stipulation inconsistent with the written contract, and for that reason was properly stricken." It follows that the first question propounded by the Court of Appeals should be answered in the affirmative.

■ The second question is: "In a suit by the vendor on such written contract as that described in the foregoing question, will the

vendee be permitted to show, for the purpose of engrafting an express warranty upon the written contract, that he was not familiar with the 'Snoflour' brand of flour, but was familiar with the 'Elberta' brand, which he had been handling in his wholesale grocery business, that he so informed the agent of the seller procuring the contract, and that such agent represented to him that 'Snoflour' was in all respects the equal of the 'Elberta' brand of flour?" On account of indefiniteness, the writing showed on its face that it did not purport to speak the entire contract; and where it appears that the part omitted, and necessary to complete a definite contract, related to quality of the goods forming the subject-matter of sale, it was competent in a suit on the contract by the vendor for the defendant "to show, for the purpose of engrafting an express warranty upon the written contract, that he was not familiar with the 'Snoflour' brand of flour, but was familiar with the 'Elberta' brand, which he had been handling in his wholesale grocery business, that he so informed the agent of the seller procuring the contract, and that such agent represented to him that 'Snoflour' was in all respects the equal of the 'Elberta' brand of flour." The effect of such proof would not be to engraft an express warranty upon "a valid written contract," but to prove essential terms of the contract actually made which had been omitted from the paper which showed on its face that it did not speak the entire contract. As explained above, the second question is answered in the affirmative.

■ The third question is: "In such a case, will proof on behalf of the defendant that flour actually delivered to him under the written contract was inferior in quality to the 'Elberta' brand of flour establish a breach by the vendor of such warranty, in the absence of proof that the floor delivered did not measure up in quality to the standard of the 'Snoflour' brand under which it was sold and delivered?" This question must be answered in the affirmative. The quality of the "Elberta" brand which was known to the parties was made the quality of the flour contracted to be sold, and proof that the flour delivered was inferior to that brand would show breach of the warranty. It was not a question of comparison between the quality generally of two brands; but the question was, did the flour sold equal the quality of the "Elberta" brand?

*Answers in affirmative. All the Justices concur.*