## DORSEY *v.* CLEMENTS.

No. 15858.   SEPTEMBER 9, 1947.   REHEARING DENIED OCTOBER 23, 1947.

*George P. Wright, J. W. Dennard,* and *J. H. Dorsey,* for plaintiff in error.

*H. G. Rawls,* contra.

Bell, Justice. A phrase or clause in a contract, as a timber lease, may be plain and unambiguous as to one or more matters, and yet be ambiguous with respect to other matters. The question here is whether the phrase, "timber suitable for turpentine purposes," is ambiguous with respect to the minimum size of pine trees that would be suitable for turpentine purposes. The Court of Appeals held that such expression is ambiguous, and in this we think that the court erred.

"The construction of a contract is a question of law for the court. Where any matter of fact is involved (as the proper reading of an obscurely written word), the jury should find the fact." Code, § 20-701. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." § 20-702. "Parol evidence is inadmissible to add to, take from, or vary a written contract. All the attendant and surrounding circumstances may be proved, and if there is an ambiguity, latent or patent, it may be explained; so if a part of a contract only is reduced to writing (such as a note given in pursuance of a contract), and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible." "Words generally bear their usual and common signification; but technical words, or words of art, or used in a particular trade or business, will be construed, generally, to be used in reference to this peculiar meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties." "The custom of any business or trade shall be binding only when it is of such universal practice

as to justify the conclusion that it became, by implication, a part of the contract." § 20-704 (1, 2, 3). See also Code, §§ 38-501, 38-502. "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning." § 20-703. This provision, however, can have no application unless the contract is ambiguous. *Holloway* v. *Brown,* 171 *Ga.* 481, 483 (155 S. E. 917).

In the instant case, the plaintiff alleged in effect that at the time the lease was executed, she had a definite agreement and understanding with the defendant that the phrase, "timber suitable for turpentine purposes," should be construed to mean and to include only such trees as were on the date of the contract 10 inches in diameter 54 inches above the ground. There is no contention that this agreement was in writing, but it has been treated by the parties as being a mere oral agreement, and it was so treated by the Court of Appeals. There is no allegation that any fraud whatever was perpetrated upon the plaintiff, and the suit is a mere action for damages, with no effort to reform the lease as for fraud, accident, or mistake.

We agree with counsel for the lessor (plaintiff in the trial court, defendant in certiorari here) that, unless the court can construe this contract and determine its legal meaning, then we would be obliged to hold that it is ambiguous and subject to explanation by proof of such agreement. So the question is squarely presented as to whether the contract is ambiguous with respect to the minimum dimensions of pine trees that are suitable for turpentine purposes.

This court has several times held that the word "timber" is not a word of invariable meaning, but we are not aware of any decision holding that, where a contract conveys or leases "all the timber" on a described tract of land, such expression is ambiguous so as to allow proof of a prior or contemporaneous parol agreement as to what it should be construed and understood to mean. On the contrary, the court has itself construed such contracts in the light of all the attendant and surrounding circumstances, so far as they appeared, and has thus resolved the variableness as a matter of law according to the terms of each particular contract. *Pennington* v. *Avera,* 124 *Ga.* 147 (52 S. E. 324); *Vandiver* v. *Byrd-Matthews Lumber Co.,* 146 *Ga.* 113 (90 S. E. 960); *Reynolds* v. *Wingate,* 164

*Ga.* 317 (138 S. E. 666) ; *Neal Lumber &c. Co.* v. *O'Neal,* 175 *Ga.* 883 (166 S. E. 647). See also *Dickinson* v. *Jones,* 36 *Ga.* 97. We do not in this case have the word "timber," without further words qualifying and limiting its meaning, but we have the adjective phrase, "suitable for turpentine purposes," defining and limiting the timber that is covered by the contract.

The word "suitable" has been given various definitions, including: adapted, appropriate, apt, fit, proper. Webster's Twentieth Century Dictionary (1938), 1663; 60 C. J. 1003. These words are mere synonyms, however, and seemingly no word would be more *suitable* in the instant contract than the word "suitable" itself, unless specific dimensions had been stated; but even this fact does not tend to show that the word is an ambiguous term as used in the present contract.

The word "ambiguity" has been variously defined by the courts, but for the purpose of this case it is sufficient to say that a word or phrase is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one. *Novelty Hat Mfg. Co.* v. *Wiseberg,* 126 *Ga.* 800 (55 S. E. 923) ; *First National Bank of Sparta* v. *Hancock Warehouse Co.,* 142 *Ga.* 99 (1) (82 S. E. 481).

"A contract may be so clear as not to require interpretation, but a mere lack of clarity on casual reading is not the criterion for determining whether a contract is afflicted with ambiguity within the rule as to the admission of parol evidence to explain its meaning. Nor is a contract ambiguous within that sense merely because it may be even difficult to construe. The construction of a contract, if needed, being a question of law for the court, as well as a duty that rests upon the court, there can be no ambiguity within the rule to which we have referred, unless and until an application of the pertinent rules of interpretation leaves it really uncertain which of two or more possible meanings represents the true intention of the parties." *McCann* v. *Glynn Lumber Co.,* 199 *Ga.* 669, 679 (34 S. E. 2d, 839). In *Parham* v. *Robins,* 197 *Ga.* 386 (29 S. E. 2d, 608), it was said: "The parties to the conveyance are presumed to have known the law of this State, as declared in the decisions of this court, at the time of its execution, and hence, to have intended that the word 'timber' when used therein should have the meaning that the decisions of this court theretofore gave it." The question in that case was as to the meaning of the phrase "merchantable timber."

On the same principle, the lease here should be construed also in the light of the law touching waste and ordinary care and diligence. Code, §§ 85-604, 85-803, 105-201. Indeed, it is a well-established rule that the laws which exist at the time and place of the making of a contract enter into and form a part of it. *West End & Atlanta Street R. Co.* v. *Atlanta Street R. Co.*, 49 *Ga.* 151 (5), 159; *Bank of Chatsworth* v. *Hagedorn Construction Co.*, 156 *Ga.* 348 (1), 357 (119 S. E. 28); *Horton* v. *Johnson*, 192 *Ga.* 338 (1), 347, 348 (15 S. E. 2d, 605); 12 Am. Jur. 769-71, § 240.

Nor is it necessary that a contract shall state definitely and specifically all facts in detail to which the parties may be agreeing, but as to such matters it will be sufficiently definite and certain if it contains matter which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves. That is certain which may be made certain. 6 R. C. L. 645, § 59; 12 Am. Jur. 560, § 69; Southwest Pipe Line Co. *v.* Empire Natural Gas Co., 33 Fed. 2d, 248 (64 A. L. R. 1229, 1234).

The difficulty in the present case, as we view it, lies, not in construing the contract for the purpose of ascertaining its legal meaning as a written instrument, but in mentally separating the contract itself from its subject-matter, namely, pine trees as they actually exist in the woods.

It would not be an unusual thing for parties to be in complete accord as to the meaning of descriptive words as *language in a contract,* and yet differ greatly as to what particular articles or things would come within such description. In such a case, two separate and distinct mental operations would be involved; and so, as we attempt to solve the present case, it may be helpful to bear in mind that studying the words of the contract is one thing, while their application to the subject-matter (determining what trees would come within their meaning) is an entirely different thing. The one relates to a question of law, while the other would depend on evidence. For instance, the writer is satisfied that he knows and can state the *legal* meaning of the present contract, although he will at the same time concede and emphasize that he does not know *as a matter of fact* how large a tree must be, by measurement, in order to be suitable for turpentine purposes; he being (as it were) a lawyer, and not a "timber" man.

In *Shaw* v. *Fender,* 138 *Ga.* 48 (74 S. E. 792), the principal question was whether the timber contract there under consideration limited the use of the timber to sawmill purposes, or whether it could be used by the purchaser or grantee for turpentine purposes, and as to this question, the court in the first division of the opinion, held that, under the plain terms of the conveyance, the purchaser was authorized to use the trees for either purpose. But it was further contended and alleged that the expression in the timber deed, "but timber is not to be cut down less than 14 inches at the stump," was ambiguous, and that the true intention of this expression was, "but timber is not to be cut down less than 14 inches at the stump two feet from the ground, for sawmill purposes only;" the ambiguity having resulted from accident or mistake in the drafting of the deed. The defendant demurred specially to the paragraph of the petition containing these allegations as to ambiguity, and moved to strike it upon the ground that it was an attempt to engraft by parol a restriction upon the estate granted. The question thus presented was dealt with in the second division of the opinion, as follows: "The grantee of the deed is not a party to the cause, and there is no prayer for the reformation of the deed. It may be shown by parol testimony what is the usual stump height for cutting timber. When the parties omitted to state the stumpage height in the deed, it is to be understood that they contracted with reference to the usual and customary rule in that particular. But an attempt to limit the use of the property conveyed by parol proof involves an entirely distinct proposition. As the deed is written, it is unambiguous, and equity will not enjoin the enforcement of an unambiguous contract on the ground that by mistake of the scrivener it was not made to express the real agreement between the parties, without first reforming the instrument under appropriate pleadings." Nevertheless, since the petition distinctly alleged that the defendants had cut and were working, for turpentine purposes, many trees that were smaller than 14 inches in diameter at the *usual* stump height, it was held in division 3 that the petition stated a cause of action for enjoining such continuing trespass.

In *Gray Lumber Co.* v. *Gaskin,* 122 *Ga.* 343 (4) (50 S. E. 164), it was held that a lease of "timber suitable for sawmill purposes" includes cypress timber, when there is nothing to show that, by

the custom of the trade, only pine timber is embraced in such description. In the opinion it was said: " 'Timber suitable for sawmill purposes' means any timber which is ordinarily used for manufacture into lumber. This would include cypress, or oak, or any other variety of timber which was suited for such use. There is nothing in the lease to indicate that only pine timber was meant, and there is no evidence that by the custom of the trade the language used has such a restricted meaning." While the *Shaw* and *Gaskin* cases might perhaps be distinguished from the present case on narrow factual grounds, we think that on principle they are both applicable here as precedents.

In view of the foregoing general principles relating to interpretation, and noting especially the two decisions last mentioned, we hold that the words, "timber suitable for turpentine purposes," would mean any timber of whatever size that is ordinarily used for turpentine purposes; the size being determined by custom, if one is shown to be applicable. We might express the same thing in different words with respect to size by defining the phrase as meaning timber of any size that may consistently with ordinary prudence be used for such purposes; this being in law the true criterion, whether shown by proof of custom or other proof.

"In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. Applied to preservation of property, ordinary diligence means that care which every prudent man takes of his own property of a similar nature." Code, § 105-201. It cannot be presumed that either of the parties intended waste, and therefore it must have been intended by both of them that the lease would include, with respect to size, only such timber as an ordinarily prudent owner would use or lease for turpentine purposes. Timber that would measure up to this *legal standard* would be suitable, otherwise not, so far as minimum dimension is concerned.

The decision in *Stewart* v. *Cook*, 118 *Ga.* 541 (45 S. E. 398), is also pertinent in this connection. In that case, an action was brought for the breach of a written contract for the sale and delivery of 100 bales of cotton; the contract being silent as to weight of the bales, and it being alleged in the petition that both round and square bales were sold. It was held by this court that the weight of the bales might be shown by evidence as to what was the stand-

ard weight and trade meaning of square bale and round bale; but that, where the petition failed to allege what was the customary meaning of these terms and alleged that the parties made an express verbal agreement as to the weight of the bales, it affirmatively appeared that the contract was partly in writing and partly in parol, and that the requirements of the statute of frauds were not met.

While that case, *Stewart* v. *Cook,* did not involve a timber contract, the rulings made therein are directly in line with the principles laid down in *Shaw* v. *Fender* and *Gray Lumber Co.* v. *Gaskin,* and in our opinion the decision in that case is likewise applicable in construing the present contract.

So, if, as applied to the lease here under consideration, there was a custom of business or trade relating to size that became by implication a part of the contract, then in case of controversy, such custom would control as to the minimum size of trees that are ordinarily used for such purpose. *Watson* v. *Hazlehurst,.* 127 *Ga.* 298, 300 (56 S. E. 459); *Strickland* v. *Richardson,* 135 *Ga.* 513 (1) (69 S. E. 871); *Citizens & Southern Bank* v. *Union Warehouse &c. Co.,* 157 *Ga.* 434 (3), 446 (122 S. E. 327). But if no such custom existed, it would in that event be permissible to show by other evidence what class of trees as respects dimensions could in ordinary prudence be used for turpentine purposes—considering present yield and injury, if any, as against future growth and value, along perhaps with other factors. Code, §§ 85-604, 85-803, 105-201. In the latter case, that is, if there was no applicable custom, opinion evidence would be admissible. It should be admitted, however, not to explain the meaning of the descriptive terms in the contract, but simply for the purpose of determining what class of trees or timber as to size would come within such description. Code, §§ 38-1708, 38-1710. Nor, as indicated above, would the quoted phrase be varied in its *legal meaning* because of the different methods of proof, for that would be the same whether a custom be shown or not, since any such custom, if existing, would presumably represent the standard of ordinarily prudent men. *Mayor &c. of Columbus* v. *Howard,* 6 *Ga.* 213 (6); *Arrington Brothers & Co.* v. *Fleming,* 117 *Ga.* 449, 451 (43 S. E. 691, 97 Am. St. R. 169).

Accordingly, although the subject-matter of the contract may be described in general terms only, as all the "timber suitable for

turpentine purposes," there is, in a legal sense, no uncertainty whatever as to the meaning of these words, and all that remains to be done, and all that should be done, is to apply the description to the subject-matter by some form of extraneous evidence. *Clark v. Cagle,* 141 *Ga.* 703 (2) (82 S. E. 21, L. R. A. 1915A, 317); *A. C. Alexander Lumber Co.* v. *Bagley,* 184 *Ga.* 352 (1), 360 (191 S. E. 446).

Still other forms of proof, besides those above indicated, might perhaps be admissible for the latter purpose. Compare Colleton Mercantile Co. *v.* Gruber, 7 Fed. 2d, 689. But, in our opinion, it would violate both the statute of frauds and the parol-evidence rule to allow proof of a prior or contemporaneous oral agreement as to what the words of the contract as quoted should be construed to mean and include.

The oral agreement here alleged, as to what the word "suitable" should be understood to mean and include, would just as surely and completely determine the *quantity* of the subject-matter, as the oral agreement as to the weight of bales would have done in *Stewart* v. *Cook,* 118 *Ga.* 541 (supra). See Code, § 20-107.

We have carefully examined all of the cases cited for the defendant in certiorari. Only the following involved timber contracts: *Pennington* v. *Avera,* 124 *Ga.* 147 (52 S. E. 324); *Vandiver* v. *Byrd-Matthews Lumber Co.,* 146 *Ga.* 113 (90 S. E. 960); *Reynolds* v. *Wingate,* 164 *Ga.* 317 (138 S. E. 666); *Neal Lumber & Mfg. Co.* v. *O'Neal,* 175 *Ga.* 883 (supra), and Davis *v.* Martin Stave Co., 113 Ark. 325 (168 S. E. 553).

The four Georgia cases were apparently cited merely for· the proposition that "timber" is not a word of invariable meaning. But, as we have already shown, it was not held in any of those cases that the meaning of this word as used in a contract could be explained by proof of a prior or contemporaneous parol agreement as to what it should be construed to mean or include.

In the Arkansas case, it appeared that Davis by written contract sold to Martin "all the oak timber suitable to make staves or stave bolts," and the principal issue for determination was whether the contract conveyed only white-oak timber, or included red-oak also. The court in that case did not hold that the contract was ambiguous, but merely stated what had been ruled in a previous decision, to wit, that where a contract contains words of latent ambiguity, *or*

where technical terms are used or terms which by custom and usage are used in a sense other than the ordinary meaning of the words, oral testimony is admissible to explain the meaning of the terms or words used. It does not appear that there was any demurrer or objection to evidence in that case. The plaintiff and the agent of the defendant, who made the contract for it, both testified that it was not their intention to include the red-oak timber, *and that it was not considered suitable for making staves and stave bolts in that community at the time the contract was executed.* (Italics ours.) Also, a preponderance of the evidence showed that at the time the contract was executed red-oak timber, according to the custom of the community, was not considered suitable for making staves and stave bolts and was not used for that purpose. It was held that the undisputed evidence showed that the contract did not include red-oak timber, and the finding of the trial court to the contrary was reversed. So, the Arkansas decision does not support the contention of the lessor in the present case.

There are only three other cases among those cited for the lessor that seem to require special mention.

In *Ford* v. *Lawson,* 133 *Ga.* 237 (1) (65 S. E. 444), it was held that the term, "good cotton," was ambiguous and was subject to explanation by showing the understanding of the parties as to its meaning. But in that case there was evidence tending to show that there were several grades indicated by numbers in the Atlanta market, all of which would be classed as good cotton; and, besides this, the words there under consideration were materially different from those in the present case.

In *Hartwell Grocery Co.* v. *Mountain City Mill Co.,* 8 *Ga. App.* 727 (70 S. E. 48), the action was brought to recover the purchase-price of flour. The contract merely called for so many sacks of "W. than snow," and so many sacks of "St. Elmo." The grade of the flour was not specified. The defendant attempted to show that, at the time the contract was made, the salesman represented that "Whiter than snow" was the name of a full patent flour, and that "St. Elmo" was a standard half patent. The defendant also alleged that the flour did not conform in grade to these specifications. It therefore appeared that the subject-matter of the contract was flour sold under two separate *trade-names.* It was held that parol evidence was admissible to identify the subject-matter

and to show what the plaintiff's salesman had represented to the defendant as to the grade of flour represented by these words. The case of *Walnut Creek Milling Co.* v. *Smith Brothers Co.,* 178 *Ga.* 341 (173 S. E. 95), also involved a contract for the purchase and sale of a quantity of flour, in which contract the flour was described and identified only by the trade name or brand "Snoflour." It was held by this court, in answer to a question certified by the Court of Appeals, that the contract was ambiguous to the extent that the vendee should be permitted to prove that, according to an understanding between the parties not expressed in the writing, the term "Snoflour" contemplated a grade of flour equal in all respects to another brand of flour known as "Elberta" brand, with which the vendee was familiar.

We do not have in this case a mere trade or brand name, apparently familiar to only one of the parties. On the contrary, we have a general descriptive phrase, the meaning of which, as language in a contract, was presumably well known to both the contracting parties, notwithstanding they might differ as to what trees or timber, according to dimensions, would come within the description contained in such contract. As to such latter issue, parol evidence would be admissible for the purpose of applying the description to the subject-matter, but any attempt to prove that at the time of the execution of the contract the parties had an oral understanding as to the meaning of such phrase would clearly violate the statute of frauds, as well as the parol-evidence rule.

As indicated above, no decision has been cited holding that such an expression as was used in the present contract is ambiguous and may be explained by proof of a contemporaneous oral agreement as to what the word "suitable" should be construed to mean, with respect to dimensions or other physical characteristics, nor has our own research disclosed any such case; and if such a rule should be adopted, we think that it would greatly imperil many contracts in reference to timber, the forms of which have long been considered stable and certain under the law of this State. Let us consider for a moment what confusion and uncertainty might result from the adoption of such a rule. If the plaintiff here should be permitted to allege and prove a parol agreement limiting the size of the timber to 10 inches in diameter 54 inches above the ground, then it would be equally permissible for any lessor in

a like case to allege and prove that the words "suitable for turpentine purposes" should be construed to mean timber not less than 18 or any greater number of inches in diameter, at any designated height. So, the defendant (lessee) in the instant case could in his answer allege an oral agreement that the words in the lease should be construed to mean trees of any smaller size, such even as 2 or 3 inches in diameter—thus greatly enlarging the subject-matter of the contract, provided he could by evidence convince the jury as to the truth of his allegations. In other words, the very subject-matter of the lease, that is, the *quantity* of the timber, could be either reduced or enlarged by proof of a contemporaneous oral agreement—despite the fact that the parties have reduced to writing what appears to be a complete and legally sufficient contract. Moreover, in any of the supposed situations, the case would really be tried, not upon the written agreement, but on issues relating to the *oral* agreement or agreements, so that the written contract itself might as well never have been pleaded or even executed.

The foregoing opinion is intended, of course, to deal only with the assignments of error contained in the petition for certiorari.

*Judgment reversed.  All the Justices concur, except Duckworth, P. J., who dissents, and Wyatt, J., who took no part in the consideration or decision of this case.*