Edenfield, District Judge, dissented and filed opinion.

The **LOVABLE COMPANY**, Plaintiff-Appellee,

v.

**HONEYWELL, INC.**, Defendant-Appellant.

No. 28840.

United States Court of Appeals, Fifth Circuit.

June 22, 1970.

Rehearing Denied Aug. 6, 1970.

Eugene T. Branch, Atlanta, Ga., for defendant-appellant.

Edward E. Dorsey, Atlanta, Ga., for plaintiff-appellee.

Before TUTTLE and CLARK, Circuit Judges, and EDENFIELD, District Judge.

TUTTLE, Circuit Judge:

This appeal presents a relatively simple problem of construing a written contract, which deals with a complex subject matter. The subject matter is the installation of computer equipment by Honeywell in the offices of Lovable. The problem of construing the contract comes to us by reason of an order of the trial court denying a motion for summary judgment filed by Honeywell, an order which would not normally be reviewable, since it is an interlocutory order. However, under Title 28 U.S.C.A. § 1292(b), the trial court entered the appropriate certification and this court granted a petition that we consider an appeal of the interlocutory order.

Both parties here agree that the lawsuit must ultimately be disposed of by a determination of what the parties contracted to do as a result of the execution by them of four documents. The appellee, plaintiff below, The Lovable Company, argues that the four documents obligated Honeywell to install its computer equipment in the Lovable Company offices at a monthly cost to Lovable of approximately six thousand dollars and further that Honeywell guaranteed that the equipment "will handle the workload of Lovable Brassiere Company for the first twelve months of operation," and that "Honeywell guarantees the resulting three tape system will handle all of the workload defined in your proposal dated

January 26, 1962, within a single shift operation."

Honeywell, to the contrary, contends that the contract documents obligated it to install the equipment and make it available to Lovable for a period of four years at a monthly rental of $6,004.00 and that it would furnish a senior systems analyst on a full time basis for a certain period to Lovable prior to this installation at Honeywell's expense to assist Lovable in "planning and designing a system for its use of the equipment," and that it would furnish Lovable, at Honeywell's expense, two full time resident field service engineers to maintain the equipment for a certain scheduled period of time, but that it did not undertake to promise or guarantee what the equipment would actually produce in terms of meeting the reasonable requirements of Lovable as a new system; that it agreed simply to a condition that if Lovable "reasonably determined within a year that the leased equipment will not handle the reasonable needs" of Lovable, the contract would terminate thirty days after notice of that fact.

As indicated, the parties, in their several briefs, reply briefs, and rebuttal briefs, ultimately agreed on the proposition that the four documents are controlling. The sole point of dispute which causes Lovable to insist that there is a triable issue of fact is its contention that a letter written by Lovable to Honeywell on February 13, 1962, thus some time prior to the execution of the contract dated March 22, 1962, expressed Lovable's position that the contract, thereafter written up, was to embody language creating an obligation by Honeywell in the terms which we have quoted above; that the contract thereafter written up must be *construed* as having embodied this obligation. It is Honeywell's contention that the documents before the trial court show without dispute that after the writing of the February 13th letter, Lovable, by a letter of February 21st, actually placed its order for the equipment for delivery in February, *1963,* approximately one year later, "subject to final nego-

tiation and approval of a formal contract," and that the formal contract, signed by Lovable on March 7 and by Honeywell on March 22, 1962, with its addendum, plainly and unambiguously demonstrated that the only issue before the court was the construction of four written contractual agreements, and that there remained no substantial issue of fact to be decided by a full blown trial.

The parties do not discuss, since there is no real disagreement between them, the principles surrounding the propriety of granting a motion for summary judgment. However, to make it clear what we are dealing with we quote from Rule 56 of the Rules of Civil Procedure, which provides that when a motion for summary judgment is filed "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

By the very nature of the motion, the granting of a motion for summary judgment is the exception rather than the rule. However, it is a tool made available to the courts for their proper use when nothing is to be gained by a full trial.

As stated by this court in Liberty Leasing Co. v. Hillsum Sales Corp., 5 Cir., 1967, 380 F.2d 1013, "The burden is upon the moving party [here Honeywell] to establish that there is no genuine issue of fact, Kilfoyle v. Wright, 5 Cir., 1962, 300 F.2d 626, 629; Bragen v. Hudson County News Co., 3 Cir., 1960, 278 F.2d 615, 617, and the party opposing the motion should be given the benefit of every reasonable doubt, Heyward v. Public Housing Administration, 5 Cir. 1956, 238 F.2d 689, 696. However, rule 56 requires that the opposing party be diligent in countering a motion for summary judgment, Southern Rambler Sales, Inc. v. American Motors Corp., 5 Cir. 1967, 375 F.2d 932, and mere general allegations

which do not reveal detailed and precise facts will not prevent the award of summary judgment, Federal R. of Civ.P. 56 (e), Robin Construction v. United States, 3 Cir., 1965, 345 F.2d 610, 613–614." 380 F.2d 1013, 1014–1015.

It is against this standard that we test the correctness of the trial court's denial of the motion for summary judgment in this case. Fortunately, we are faced with a record which, as stated above, discloses that both parties agree that the problem must be resolved by a construction of four written documents. The disagreement between the parties lies in the fact that Lovable contends that an additional document, a letter written by its president, apparently dealing with an entirely different contract, expressed Lovable's understanding of obligations on the part of Honeywell, which, since they were not expressly repudiated by Honeywell prior to the execution of the final contract, must, as a matter of construction of the language in the final contract be held to control. While the case is simplified by the fact that it comes to us on an agreed appendix setting forth the affidavits and exhibits, it is nevertheless somewhat cumbersome to deal with, because of the fact that in the several documents there is much that is irrelevant to our decision here. We refer only to the facts that are necessary to our decision.

Fortunately, also, it is correct to say that there is no single disputed fact at issue between the parties—that is to say there is no dispute as to the existence of any of the documents, their genuineness or their execution. There is a dispute as to the *effect* of the documents.

We think it most convenient to detail the facts by stating chronologically what appears from the record.

(1) By an affidavit filed in response to the motion for summary judgment, Dan Garson, Vice President of Lovable, presented a letter written and mailed by him on or about February 13, 1962, to Honeywell. The affidavit then stated as follows:

"Deponent further states that said letter was written in response to a letter dated February 9, 1962,[1] from Mr. J. L. Richardson, Jr., to the deponent in his capacity as Executive Vice President of the plaintiff company, and to confirm the understanding between the parties as expressed in said letter of February 9, 1962, and in other conversations and communications between the parties that Honeywell, Inc. would design and implement for The Lovable Company an electronic computer system capable of performing within one prime shift time certain specified functions generally described and defined by Honeywell, Inc. as timekeeping, accounts receivable, production control, inventory control, statistics, order writing, billing and payroll. Deponent further states that such understanding was agreed to by Honeywell, Inc. and embodied in the Contract between the parties and the Addendum thereto."

This letter, then, dated February 13, is the first document in chronological order that is before the court. It is addressed to Mr. Joseph L. Richardson, Area Sales Manager, Minneapolis Honeywell Regulator Company, at an Atlanta address. The material part states: "The Lovable Brassiere Company [the former name of plaintiff] plans to install a Honeywell 400 Computer System at our manufacturing facility in Atlanta, Georgia. Accordingly, I have signed the enclosed contract,[2] subject to Honeywell's agree-

---

1. No copy of this letter is supplied or otherwise mentioned in the record.

2. Nowhere in the record does there appear to be any contract signed by either party as of or prior to February 13th, nor is the "enclosed contract" in any other way identified with the formal documents sub-

sequently signed during the month of March by the parties, and on which the suit was brought. Reference is made to a "proposal" submitted by Honeywell dated January 26, but this "proposal" is nowhere set out or explained, nor is the letter of February 9 set out anywhere.

ment that the commitments enumerated in your letter to me dated February 9, 1962 [3] plus the additional conditions defined in this letter represent a part of the contract. * * *

"We understand that the initial equipment configuration to be delivered by Honeywell will include a central processor, high speed printer, high speed card reader, card punch, one magnetic tape unit, and console. The monthly rental for this configuration is $6,004.00. This configuration will handle the workload of the Lovable Brassiere Company for the first twelve months of operation, whereupon two additional magnetic tape units will be added to the system. It is further understood that Honeywell guarantees the resulting three tape systems will handle all of the workload defined in your proposal dated January 26, 1962, within a single shift operation.

" * * *

"We would appreciate receiving prompt acknowledgement from the executives of Honeywell on the acceptability of this agreement."

The next document in evidence is dated the very next day, February 14th, and is entitled "Addendum to Honeywell Contract DSC5A/DSC2C, February 14, 1962." While it appears strange that this "addendum" ends up as being an addition to a contract finally signed by Lovable on March 7th and by Honeywell on March 22nd, there is no doubt that it was incorporated in the basic contract and is one of the four documents which we have heretofore referred to as constituting and creating the liabilities of the parties.

Significant parts of this addendum are that Lovable's (denominated lessee's) liability for rent would not start to accrue until 90 days from date of complete installation of the equipment, and that Lovable should have no liability of any kind under the contract if it should notify Honeywell in writing prior to August 31, 1962, that it wished to cancel the contract; that "at the earliest practicable date and for a period of 90 days thereafter, or such lesser period as lessee shall determine, Honeywell agrees to furnish its senior systems analyst on a full time basis to lessee at Honeywell's expense to assist lessee in planning and designing a system for the use of the equipment", that Honeywell agreed to deliver the equipment to lessee during the month of February, 1963; then followed paragraph (f), which the plaintiffs relied upon as their basis for not only cancelling the contract but for asserting a claim for some $900,000 of damages in their suit later filed against Honeywell. This paragraph provides as follows:

"(f) Honeywell agrees that in the event lessee reasonably determines that the above equipment will not handle the reasonable needs of lessee at any time during a period of one year following the commencement of rental payments hereunder, this contract shall terminate 30 days after written notice of such fact, and lessee shall thereafter have no further liability hereunder. The uses to which lessee will put the equipment during such one year period may be generally described as timekeeping, accounting for accounts receivable, and payroll, statistical computations, order writing, and billing. Lessee will immediately notify Honeywell when lessee determines that the equipment has, during such one year period, failed to meet lessee's reasonable needs in such uses."

The addendum also provided that Honeywell would furnish to lessee at Honeywell's expense, two full time resident field service engineers to maintain the equipment, and that preventive maintenance would be accomplished on a certain time schedule; further, that Honeywell would provide continuous on-site maintenance coverage for all of its equipment, and finally, that Honeywell would train "lessee's executives, systems people, programming and operating personnel in specially designed courses to provide them with the technical and practical

3. See footnote # 2.

knowledge needed for the effective and efficient execution of their assigned tasks."

The next document of significance in the record appears under date of February 21, 1962. This document is brief. It is addressed to Mr. Richardson by Mr. Garson as follows: "Please accept this letter as authorization to place on order, subject to final negotiation and approval of a formal contract, the following H400 System Equipment for delivery in February, 1963." (Then follows a description of five items of equipment with a monthly rental of $6,004.00.)

The next document of significance is the response addressed to Mr. Garson dated March 5th, which is also brief: "Dear Mr. Garson: Thank you for your letter dated February 21, 1962. The Honeywell 400 Configuration itemized in your letter to J. L. Richardson, our area Sales Manager, has been entered on our order priority schedule for delivery in February, 1963.

"It has been noted that your order is subject to final negotiation and approval of a formal contract. We look forward to the approval of the aforementioned contract and to many years of successful association between our two firms."

We then find a letter dated March 7th, addressed by Mr. Garson to Mr. Richardson in acknowledgment of the last mentioned letter, and in essential part, it states: "We have reviewed your standard contract forms, DSC5A and DSC2C and wish to add an addendum, dated February 14, 1962, to these documents. This addendum is attached in triplicate along with the contract forms, all signed at your request.[4]

"We would appreciate Honeywell's acceptance of this addendum as soon as possible."

The next document is the executed basic contract itself. Since none of its terms are in dispute, we need not reproduce it here. It is in form a Lease Agreement of five items of equipment for a four year period for $6,004.00 per month, covering a certain number of basic hours of use per month and providing for certain maintenance and repairs and the like. It contained a clause 9.2 which provided:

"9.2. If either party shall be in default of its covenants under this agreement and such default continues for 30 days after written notice thereof by the other party, this agreement may thereupon be terminated by such other party."

Finally, it contained paragraph 9.5, which read: "Subject to addendum dated February 14, 1962 * * *"

The plaintiff below repeatedly asserts in its briefs here that it does not attempt to vary the terms of the contract by oral evidence. It recognizes that it is bound by the language of the contract and the addendum, but contends that the language, as written, must be *construed*, apparently even though there is no ambiguity in it, consistently with the terms of the letter written by one party to the other on February 13th, at a date considerably before the preparation of the contract sued upon was authorized by the purchase order and even though not a word of the asserted obligation of performance is contained in the literal language of either the formal contract or the addendum. Moreover, it is appropriate to comment on the fact that the addendum was the product of Lovable and was made a part of the final contract upon Lovable's insistence.

We have heretofore spoken of four documents constituting the contract. The first two in the Contract of March 22 and the addendum and the other two are as follows: Effective July 12, 1963, after the operation had gone into effect, the parties signed an agreement to the following effect: "The Lessee shall have the right, after the first year of this contract, to terminate this agreement upon 90 days written notice to Honeywell, with the stipulation that Lessee shall pay to Honeywell the sum

---

4. This is the addendum of February 14th which has already been referred to above.

of $20,457 as a termination charge. The termination charge shall be applicable only in the event that the agreement is terminated prior to the end of the initial four year term." Then, on October 10, apparently to make certain that this termination charge would not be applicable if a default as described in Section 9.2 of the basic contract occurred, the parties signed a further modification as follows:

"As was discussed, there is a termination clause in our agreement of March 22, 1962 in section 9.2. This termination clause permits you to terminate this agreement in the event that Honeywell is in default of any of its covenants under the agreement.

"In the event that you should find it necessary to terminate the agreement because of a default, it is understood that the Lovable Company would not have to pay the termination charge set forth in our addendum [presumably the modification mentioned just previously] and the termination could be effected as set forth in section 9.2."

Thus, without dispute, we have a contract finally executed in the form of a lease agreement, signed by Lovable on March 7 and accepted by Honeywell on March 22nd providing for the placing of the equipment with Lovable at a monthly rental of $6,004 for a period of four years and including a paragraph 9.2 as follows:

"If either party shall be in default of its covenants under this agreement and such default continues for thirty days after written notice thereof by the other party, this agreement may thereupon be terminated by such other party."

An addendum was executed on February 14 with a proviso that *if during the first year, Lovable reasonably determined that the equipment would not handle the reasonable needs of Lovable, the contract should terminate 30 days after written notice* of such fact to Lessee and Lessee should thereafter have no further liability thereunder and also providing that "the uses to which Lessee will put the equipment during such one year period may be generally described as time keeping, accounting for accounts receivable and payroll, statistical computations, order writing and billing. Lessee will immediately notify Honeywell when Lessee determines that the equipment has, during such one year period failed to meet Lessee's reasonable needs in such uses."

■ The basics contract and addendum are construed by the Lovable Company as guaranteeing performance of the work needed to be accomplished but is construed by Honeywell as a lease agreement which can be cancelled upon the occurrence of a condition, the condition being that the equipment was found not to meet the reasonable needs of the Lessee. Then, we have the later additions which throw considerable light upon the meaning of the entire contract by providing that, even without a default, the lessee could cancel the contract upon the payment of a penalty of $20,457 as a termination charge. We do not consider any other facts of relevance before the court bearing on the issue, because whatever is contained in Mr. Garson's letter of February 13, dealing in general terms with prior discussions comes nowhere near meeting the standards required by Rule 56 in asserting a state of facts. As to these matters, the affidavit and accompanying letter bring the case within the language of Liberty Leasing Co. v. Hillsum Sales Corp., *supra*, where this court said: "The deposition relied upon by Liberty to show that the summary judgment should not have been granted, contains no statement that in any way approaches the required specificity. No names, dates or locations are given, and the general assertions and legal conclusions which characterize the entire deposition [here affidavit] do not give rise to a genuine issue of material fact." 380 F.2d 1013, 1015.

■ We approach the problem of attempting to determine whether there is

a material issue of fact remaining to be tried by asking, "What is the question that remains open?" Lovable claims that the court should consider as a material fact the question: "What was meant by the parties when they signed the contract as represented by the four documents?" It contends that this ascertainment cannot be made upon the pleadings, affidavits and other documents now before the trial court. That court, mistakenly, we think, concluded that the position of the plaintiff was that the four documents did not constitute the entire contract. In this respect the trial court said:

"Plaintiff asserts that the entire agreement between the parties comprise more than the four documents attached to its complaints as Exhibit A. Lovable claims the agreement was induced by representations made by Honeywell which were fully expressed in the correspondence between the parties, and which became part of the agreement."

As we have previously pointed out, Lovable does not here contend that the contract was not fully expressed by the four documents. It contends merely that the documents must be construed in light of Garson's letter of February 13.

Lovable bases its argument largely on what it contends to be a Georgia rule that where one party to a contract expresses its understanding of the meaning of the contract at the time it is entered into and this expression is not countered by the other party, this in effect must be the construction given to the completed document. In this regard, Lovable cites Georgia Code Section 20–703, which says: "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning." Upon being pressed in oral argument, counsel for Lovable agreed that this term in no way modified the parol evidence rule, which is generally contained in Section 20–701 and 20–702.

The first of these provisions provides, "The construction of a contract is a question of law for the court. Where any matter of fact is involved (as the proper reading of an obscurely written word), the jury should find the fact." The second provides, "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and if it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." This concession by counsel is clearly warranted by the Georgia case law. In Dorsey v. Clements, 202 Ga. 820, 44 S.E.2d 783, the Supreme Court of Georgia carefully considered this section upon certiorari from the Georgia Court of Appeals. Referring to this section, the court said: "This provision, however, can have no application unless the contract is ambiguous," citing Holloway v. Brown, 171 Ga. 481, 483, 155 S.E. 917.

In the Holloway case, the court said, "It is a familiar rule that, in the absence of fraud, accident, or mistake, parol evidence is not admissible to vary an unambiguous written contract." Our Civil Code (1910) Section 267 (Now Section 20–703) provides:

"The intentions of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning. This section, however, is not applicable unless the contract is ambiguous." 171 Ga. 481, 483, 155 S.E. 917, 918.

An even more plainly compelling reason for discarding the idea that the statement embodied in Mr. Garson's letter of February 13 is to control the construction of the contract on which Lovable sued is the fact that the record clearly disclosed that the contract sued upon is a contract that was initiated by correspondence written by Mr. Garson on February 21 which clearly stated that the order for the equipment was "sub-

ject to negotiation and approval of a formal contract" and that the order for the equipment was to some extent formalized by the reply addressed to Mr. Garson of Lovable by Honeywell, stating, "It has been noted that your order is subject to final negotiation and approval of a formal contract." Thereafter, a "formal contract" was signed by Lovable (by Mr. Garson) on March 7 and forwarded to Honeywell and signed by that company on March 22nd. The contract thus signed is complete in itself, including the addendum which it expressly referred to and embodied as a part thereof.

We thus look at this formally executed contract to see if it is ambiguous. In neither the printed form of contract nor in the addendum does Honeywell hold itself out to guarantee a specific work performance by the equipment which was in the lease. Specifically, neither the contract nor the addendum used any language similar to that contained in the letter of February 13: "This configuration will handle all of the work load mentioned in your proposal, dated January 26, 1962 within a single shift operation." There is no contention by the plaintiff that Honeywell did not fully comply with its admitted obligation as contained in the printed contract and the addendum to furnish the expert analysts to assist Lovable in working out a system which would meet its needs or to furnish on the spot supervisory and maintenance personnel to be sure that the leased equipment was in working order.

■ It is further apparent that even though this court should construe the leasing agreement as containing an obligation by Honeywell that the equipment would satisfy certain work performance goals and that Lovable's "reasonable determination" that it did not do so was a *breach* of the contract, then it is obvious that Lovable would not be entitled to recover because it is stated in Section 9.2 of the written contract that "if either party shall be in default of its convenants under this agreement, and

such default continues thirty days after written notice thereof by the other party, this agreement may thereupon be terminated by such other party." Lovable claimed the right to surrender the leased equipment under paragraph (f) of the addendum, but it made no effort to comply with section 9.2 on the theory that Honeywell was in any way "in default" of any of "its convenants."

■ If a make-weight were necessary to make it even clearer that the contract should be construed in the way we have outlined, there is the added fact that when Lovable began to learn that the equipment was not producing the result anticipated, it requested and obtained from Honeywell an additional month within which it could determine whether or not to exercise the option to surrender the equipment. This would not have been necessary if a "breach" of Honeywell's "covenants" had occurred, because if that had been the case Lovable could have given thirty days notice and cancelled the contract, and pursued its remedies. A reasonable assumption is that Lovable found it necessary to request this thirty day additional period because it was permitted to cancel the lease upon its own "reasonable determination" only for the first period of twelve months. If it wishes to cancel thereafter, without showing a "default" by the other party to the contract there was a penalty of $20,000 to be paid for the privilege.

We have carefully considered the record which is before us and we conclude that the trial court erred in the finding that there was any material issue of fact to be disposed of. There was only the question of the construction of written documents which fully delineated the obligations of the parties. It is plain what the obligations of Honeywell were; Honeywell was required to furnish the equipment by February, 1963; it was required to furnish techical assistances prior to that time to assist Lovable in making the maximum use of the equipment in its business and setting up a system to use it; it was required to fur-

nish constant maintenance personnel while the equipment was in use; it was required to furnish additional information to Lovable personnel in the actual utilization of the equipment, and there, so far as is relevant to the case here, the obligation was complete. On the other hand, Lovable was obligated to permit installation of the equipment unless prior to September 1st of the year before installation it had decided not to go forward with the project; it could then decide for a period of twelve months after installation that the equipment did not meet the needs of the business, using its reasonable good faith and judgment to make that determination, whereupon it could return the equipment and be relieved of the $6,004 monthly lease obligation for the balance of the four year term; it could continue to use the equipment and, thereafter, it could, upon the payment of a penalty of approximately $20,000, terminate the contract at will; and during the entire period of the contract Lovable had the right, if a "default" occurred in Honeywell's obligations to cancel the contract without penalty.

It is plain that Lovable exercised the first option, that is, to exercise its reasonable judgment that the equipment did not meet its reasonable needs during the twelve months period, extended by one month, and to surrender the equipment to Honeywell. There the obligations of the parties ended.

We conclude, therefore, that the motion for summary judgment should have been granted, since, on the record before the trial court, there was no material issue of fact left for trial.

The judgment of the trial court is reversed and the case is remanded for the entry of a judgment for the defendant, the appellant here.

EDENFIELD, District Judge (dissenting):

Judge Tuttle has written an analytical and exhaustive opinion. After some research and much deliberation, however, I must dissent. In short, considering the state of this record, the business background of each of these parties, and the subject matter of this contract, I think there should be a trial; and, like Judge Tuttle, I base this conclusion on the language of the contract itself. I might feel differently if the subject matter of the contract were something other than a computer or if the background of the parties was different. But these parties were businessmen. A contract between businessmen, whether clear or ambiguous, should be construed on the basis of its own facts, in the light of sound business practice, with business sense and with the understanding and interpretation of businessmen or intelligent men of affairs. (17A C.J.S. Contracts § 294c, pp. 37–38.) The contention of Honeywell, adopted by the majority, is that it was to do little more than to furnish certain naked pieces of equipment. It did imply that the machine would run, since it was to furnish maintenance, but its contention is that it did not promise that it would accomplish any result whatsoever or even print a single line. Like the Mona Lisa of the ballad, its computer, as far as guaranteed results were concerned, was just a cold and lovely work of art. I simply cannot conceive of two capable businessmen negotiating for the sale or lease of a computer except on the basis of what it would do. Ultimately this is what Honeywell was selling and this is what Lovable thought it would get. I would examine the contract accordingly.

Against this background the "Addendum" to this contract, though admittedly not very explicit, nevertheless takes on a meaning to me quite different from that which the majority opinion would give it. It says to me, very clearly, that by the contract both parties understood and expected that the machine would at least accomplish something. For example, in subparagraph (b) of the Addendum Honeywell agrees to furnish a systems analyst to assist Lovable "in the design and implementation of a system whereby the equipment specified *shall operate satisfactorily for use as*

*described below."* The use described below is stated in subsection (f) to be "time-keeping, accounting for accounts receivable and payroll, statistical computation, order writing, and billing."

Again in subparagraph (f) Honeywell agrees that in the event it is determined that the equipment "will not handle the reasonable needs of Lessee" the contract may be cancelled.

From these words of the contract itself, it is clear to me that at least one of the parties thought it was bargaining for at least some results and that this was known to the other party. Concededly, the question is a close one but to my mind these circumstances exude at least enough "ambiguity" to permit parol evidence and to allow a jury to consider the applicability of Ga.Code Ann. § 20-703 to the effect that:

> "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning."

This is not to suggest that the plaintiff would or should recover on trial. Its delay in asserting its claim suggests that the whole suit may have been an afterthought; or it may be barred from recovery by failing to give notice of default as required by section 9.2 of the contract. Indeed the evidence may show that plaintiff itself was a computer expert and that it was warned that results were not guaranteed. I only suggest that the agreement is sufficiently ambiguous to entitle the plaintiff to a trial and an opportunity to present its evidence instead of being unceremoniously dumped out of court on motion.

ON PETITION FOR REHEARING AND SUPPLEMENTAL PETITION FOR REHEARING

PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.

It is also ordered that the supplemental petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied. See Freeman v. Continental Gin Co., (5 Cir., 1967) 381 F.2d 459.