## BELL BROTHERS *v.* WESTERN AND ATLANTIC RAILROAD COMPANY.

1. When a consignee brings suit to recover damages for a neglect of legal duty arising under a special contract of affreightment made in his behalf by the consignor with a common carrier, the consignee is not at

liberty to challenge the authority of the consignor to make the shipment under such a contract.

2. A freight receipt to which the name of a railway agent appears to have been signed by stencil is not admissible in evidence without accompanying proof to show that he issued the receipt, or that its genuineness has been recognized by his principal.

3. As the evidence upon which the plaintiff relied for a recovery disclosed that under the special contract of affreightment the liability of each of the connecting carriers was limited to loss or damage occurring on its line of road, and also that the delay which caused the loss complained of occurred before the shipment was turned over to the carrier sued, a nonsuit was properly granted.

Submitted March 3,—Decided May 16, 1906.

Action for damages. Before Judge Reid. City court of Atlanta. April 13, 1905.

The suit was against a common carrier, to recover the loss sustained by the plaintiff on a car-load of cabbages shipped to that firm on September 21, 1900, by A. D. Freeman, of Rural Retreat, Va., and delivered by the defendant company to the plaintiff on September 29 in a condition unfit for market, the cabbages being then damaged and decayed. The defendant was charged with having negligently allowed the car to stand on its side-track in the city of Marietta, Ga., an entire day. The plaintiff further alleged, that when the shipment was delivered to the defendant by its connecting carrier, the "defendant received said goods as in good order," though when the cabbages were received by plaintiff they were damaged, decayed, and unfit for market, the shipment not having been "delivered within a reasonable time, nor in the time usually consumed in conveying like shipments from Rural Retreat, Virginia, to Atlanta, Ga.," the point of destination. The defendant filed an answer in which it made a general denial of all the allegations of fact upon which the plaintiff relied for a recovery. On the trial the plaintiff introduced in evidence a bill of lading, signed by A. D. Freeman, the consignor, and by the agent of the initial carrier, which set forth the terms of a special contract under which the shipment was made, one of the stipulations being: "No carrier shall be liable for loss or damage not occurring on its own road or its portion of the through route." The court held that the plaintiff was bound by the terms of this special contract entered into by the shipper in behalf of the plaintiff, and was therefore not at liberty to offer testimony to show that A. D. Freeman was with-

out authority to make shipment of the cabbages under such a con-
tract    The plaintiff also offered in evidence a freight receipt for
the car in which the cabbages were shipped, signed by stencil ".J. H.
Boston, Agent," dated September 26, 1900, and reciting that the
shipment was "received in good order of the Atlanta, Knoxville &
Northern Railway Co." The court rejected this receipt, on the
ground that while J. H. Boston was shown to be the agent of
the defendant company at Marietta, yet the plaintiff had failed to
prove that the receipt had been signed by him, or was binding upon
that company as an admission that the shipment was received in
good order. It appeared from a letter written by the company's
claim agent, and sent to the attorneys of the plaintiff, that the car
was delivered to the defendant at nine o'clock in the morning of
the day it was received from the Atlanta, Knoxville and Northern
Railway Company, and was forwarded to Atlanta by the first train
thereafter, arriving there in the afternoon of the same day. After
the plaintiff had introduced this letter and all the other evidence it
had to offer, the court awarded a nonsuit.

*Moore & Pomeroy,* for plaintiff.   *John L. Tye,* for defendant.

EVANS, J. (After stating the facts.) 1. The bill of lading is-
sued by the initial carrier plays an important part in the plaintiff's
case, whether the plaintiff relies on the count for the tort grow-
ing out of the breach of duty arising under the contract, or on the
count charging liability on the part of the defendant under the
Civil Code, §2298, as being the last connecting carrier which re-
ceived the goods as "in good order." In the first instance, though
the consignee be not a party to a contract of carriage between a
railroad company and a shipper, the consignee may make proof of
such contract with a view to showing the company became liable to
him for a failure to comply with its legal duty as a common carrier
to perform such contract; and in the latter case, the bill of lading
is admissible to show receipt "in good order" of the goods by the
initial carrier, and that they were to be transported over more than
one railroad. The petition does not directly specify the consignor,
but, as it does not contradict an inference of a shipment by the
plaintiff firm, it was competent to show that the delivery of the
cabbages was made to the initial carrier through an agent, notwith-
standing such agent made the shipment in his own name without
disclosing his principal. Yet as the plaintiff bases the first count

of its suit upon a breach of duty arising out of a contract made in its behalf, it is bound by the terms of the contract, irrespective of the question whether its agent had authority to enter into a contract of that character. *Central Ry. Co.* v. *James,* 117 *Ga.*' 832. The plaintiff can not rely on the contract, to raise a duty, and at the same time disaffirm the agent's authority. If the consignor was without authority to make the contract of carriage, the plaintiff has ratified his act by predicating its suit upon a breach of duty growing out of that contract. Evidence of the consignor's lack of authority to sign the contract of carriage was irrelevant. The terms of the contract were neither unreasonable nor against public policy, and the contract was therefore legal and binding on the parties thereto. *Central R. Co.* v. *Avant,* 80 *Ga.* 195.

2. The freight receipt for the car in which the cabbages were shipped, signed by stencil with the name of the agent of the defendant company, was excluded from evidence, because there was no proof that the receipt had been signed by the agent, nor that it was binding upon the company as an admission that the shipment was received as "in good order." There was no proof that the agent actually signed the receipt or adopted the stencil signature, or that it was his custom to sign his name to receipts of this kind by stamp. There was no proof of the execution of the receipt, and it was properly excluded from evidence.

3. The special contract between the consignor and the initial carrier limited a recovery for loss or damage to the carrier in possession of the goods at the time of injury, or whose conduct occasioned the loss or damage. This is true with respect to both counts in the petition. *Central R. Co.* v. *Avant,* supra; *Kavanaugh* v. *Southern Ry. Co.,* 120 *Ga.* 62. When a connecting carrier who has completed the transportation and delivered the goods to the consignee in a damaged condition is sued for the loss in value, upon proof that the initial carrier received the shipment in good order the jury have the right to infer that they continued in that condition down to the time of their delivery to the carrier making the delivery to the consignee, and that the injury or loss occurred while in his possession. *W. & A. R. Co.* v. *Exposition Mills,* 81 *Ga.* 523; *Forrester* v. *Georgia R. Co.,* 92 *Ga.* 699. If nothing more had appeared than that the consignor delivered the cabbages to the initial road in good order, the plaintiff would have shifted the burden on the de-

fendant company of showing that it was not responsible for the damaged condition of the cabbage when delivered to the consignee. The only evidence offered by the plaintiff to show when the car which contained the cabbages was received by the defendant company from its connecting carrier was a letter from the agent of the defendant to plaintiff's attorneys. In that letter the agent wrote: "The car was delivered us at 9 a. m. and was forwarded south on the first train thereafter, arriving at Atlanta that afternoon." The car was turned over to the plaintiff, without delay, upon its arrival, and the plaintiff commenced early the next morning to unload it. Marietta is twenty miles distant from Atlanta, and the average freight train makes about twenty miles per hour. So it affirmatively appears that the car was in the possession of the defendant company only a part of a day, and was forwarded to destination by the first train leaving Marietta after the car was turned over to that company by its connecting line. As there was no delay in transportation or delivery to the consignee on the part of the defendant, the rot in the cabbages was attributable either to the delay of the carriers which handled the shipment before it was delivered to the defendant, or to inherent natural causes. The plaintiff's proof indicates that the loss was occasioned by the failure of the connecting railroads to transport the car to Marietta in time for it to leave on an earlier train upon the defendant's line; for there was evidence that the cabbages were shipped on September 21, and ought to have arrived in Atlanta within three or four days. As the damage was not caused by the defendant's negligence, the grant of a nonsuit was proper.    *Judgment affirmed. All the Justices concur.*