## CAMPBELL v. SIMS.

1. Under the pleadings and the evidence the following charge was not error: "That means, the burden is on Sims to show that he has title to this piece of land; and that really is the only important essential you are to determine, whether or not the title is in Sims, or whether it belongs to Maggie Campbell, or whether it belongs to Sims and he has established his title to the land." There is no evidence which would have authorized the court to charge that the deed given by the common grantor to the plaintiff was to secure a debt.

2. Under the facts the following charge was not error. "In this deed from Maria McDonald to Maggie Campbell, you will find certain language, 'My granddaughter has taken care of me in my old age,' and all this language, in the way of explanation, I withdraw from your consideration." Recitals of fact in a deed are not evidence of the truth of such recitals, as against one who was not a party to the instrument.

3. It was error for the court to allow counsel for plaintiff to ask plaintiff the following question on direct examination: "Did you ever have a deed to this property?" and to permit the plaintiff to answer: "Yes, sir," under the facts, and over the objections set out in the third division of the opinion.

4. The court erred in allowing the plaintiff to testify as follows: "I had the original of this certified copy in my possession; that paper has been lost. When I got hold of it, I had it recorded in the court-house here. I have been unable to find this paper," under the facts, and over the objections of defendant, set out in the fourth division of the opinion.

5. It was not error to allow a witness for the plaintiff to testify upon direct examination, over objection, that "I saw Sims and asked him would he buy it. I wanted to see Sims about this property. I told Sims that she wanted to get rid of this property." This evidence was not inadmissible on the ground that it was incompetent, irrelevant, and hearsay.

(a) The proof of the execution and delivery of a deed is not confined to the subscribing witnesses.

(b) The existence and genuineness of a deed may be proved by circumstantial evidence.

6. Counsel for plaintiff asked a witness for the plaintiff the following question: "Did Sims and Maria make a trade?" and the witness answered: "She told me she did." The above question was not leading, nor was it objectionable on the ground that the witness would have to "connect up" with the particular deed which the plaintiff claimed under from the common grantor. A certified copy of this particular deed was subsequently introduced.

7. It was not error on the trial of the case to refuse to allow counsel for

---

Deeds 18 C. J. pp. 430, n. 3, 6; 431, n. 37; 432, n. 38, 39, 53.
Estoppel 21 C. J. p. 1090, n. 95.
Evidence 22 C. J. pp. 260, n. 99; 830, n. 96; 831, n. 8; 930, n. 90; 993, n. 90.
Trial 38 Cyc. pp. 1618, n. 35; 1351, n. 5.
Witnesses 40 Cyc. pp. 2298, n. 83; 2313, n. 3; 2317, n. 40; 2423, n. 4.

the defendant to question, and the defendant to answer, as to a conversation between her and the common grantor at the time the common grantor was alleged to be trying to get the deed she made to the plaintiff from him.

8. It was not error, under the facts of the case, to receive in evidence, over objection of the defendant, the certified copy of the deed from the common grantor to the plaintiff.

No. 4943. JANUARY 13, 1926.

Equitable petition. Before Judge Malcolm D. Jones. Bibb superior court. April 25, 1925.

*R. D. Feagin,* for plaintiff in error.

*Martin, Martin & Lamar,* contra.

HILL, J. F. R. Sims filed an equitable petition against Maggie Campbell, to recover a house and lot in the city of Macon, which is described in the petition. The plaintiff prayed for a receiver, and that a deed from the common grantor, Maria McDonald, to Maggie Campbell, the defendant, be canceled. It was alleged in the petition that the deed of Maggie Campbell was subsequent in date to plaintiff's deed, and therefore that Maggie Campbell had no title to the property. The defendant denied the material allegations of the petition. She specifically denied that the plaintiff held any deed from Maria McDonald, the common grantor. She alleged that if the plaintiff held a paper purporting to be a deed from Maria McDonald, the same was a forgery. On the trial the defendant filed also an affidavit of forgery, which issue was submitted to the jury along with the main case, but no special verdict was found on the issue of forgery. The defendant also averred in her answer, that, if the plaintiff held a deed as alleged by him from Maria McDonald, it was not intended to be a warranty deed conveying the fee-simple title to the property in controversy, but that it was intended to be only a deed to secure a debt which was paid by Sims for Maria McDonald for taxes due on the property in controversy. On the interlocutory hearing the court denied the application for a receiver. On the trial of the case the plaintiff filed an amendment striking that portion of his petition praying for mesne profits. The jury returned a verdict for the plaintiff, and a decree was entered in pursuance thereof, canceling and declaring void the deed from Maria McDonald to Maggie Campbell, and declaring the title to the property in controversy to be in Sims. Maggie Campbell filed her motion for

new trial on the usual general grounds, and subsequently added sixteen special grounds. The motion was overruled, and Maggie Campbell excepted.

1. Grounds 1, 2, 5, 6, and 8 involve the same principle of law, and will be considered together. The court charged the jury as follows: "That means, the burden is on Sims to show that he has title to this piece of land; and that really is the only important essential you are to determine, whether or not the title is in Sims, or whether it belongs to Maggie Campbell, or whether it belongs to Sims and he has established his title to the land." It is argued that this charge is error, because it does not state correctly to the jury the only important essential which should have been determined under the pleadings and evidence in the case, inasmuch as the answer of the defendant expressly averred that if the plaintiff held a deed as alleged in his petition, the same was not intended to be a warranty deed conveying the fee-simple title to the property, but was only intended as a deed to secure a debt; and that it was error for the court, by the charge excepted to, to exclude this feature of the case from the jury's consideration. We are of the opinion that the charge as given stated a correct principle of law, and from a review of the evidence we find that there is no evidence which would have authorized the court to charge that the deed given by Maria McDonald to Sims was to secure a debt.

2. Error is assigned upon the following charge of the court: "In this deed from Maria McDonald to Maggie Campbell you will find certain langauge, 'My granddaughter has taken care of me in my old age,' and all this language, in the way of explanation, I withdraw from your consideration." Exception is taken also to the ruling out of the following recitals in the deed, and refusing to let it go to the jury for their consideration: "My granddaughter has taken care of me in my old age, and I make her this deed in part payment of her services to me. I have never executed a deed to F. R. Sims, nor given him a lien of any kind on this property, but merely let him keep my deed, as he was a preacher and seemed to be my friend and said he would pay the taxes for me. I offered to refund him the taxes he has paid for me for the past few years, and demanded my deed back, but he has not surrendered it. He has no lawful claim to the land, and I owe him nothing except what taxes he has paid on it for me. He has done nothing whatever

for me except to pay the taxes since about 1916. If he holds any paper of any kind purporting to be signed by me by mark, as I can not write, the same is a forgery, as I have never executed any paper for him relating to this land." It is insisted that this evidence was material and was a declaration against the interest of the one in possession, admitting a certain indebtedness to Sims who claims title, and that it was sufficient evidence on which to base the defendant's answer that the deed to Sims, if executed, was merely a deed to secure debt; and that it is explanatory of the consideration for the deed, etc. We are of the opinion that the court neither erred in ruling out the evidence nor in giving the charge excepted to. The recital in the deed is no evidence of the fact recited, except as against the parties to the deed and their privies. *Yahoola River etc. Mining Co.* v. *Irby,* 40 *Ga.* 479; *Cruger* v. *Tucker,* 69 *Ga.* 557 (2), 562, and cases cited; *First National Bank of Gainesville* v. *Cody,* 93 *Ga.* 127 (19 S. E. 831).

3. Movant contends that the court erred in allowing counsel for plaintiff to ask the plaintiff the following question on direct examination: "Did you ever have a deed to this property?" and permitting the plaintiff to answer: "Yes, sir." Defendant objected to the question and answer, upon the ground that Sims was incompetent to testify to that fact, Maria McDonald being dead, and the defendant being her transferee as to this particular piece of property; and also on the ground that the deed itself would be the highest and best evidence as to whether he had a deed to the property in dispute. This evidence was inadmissible, under the Civil Code (1910), § 5858.

4. Movant contends that the court erred in allowing the plaintiff, Sims, to testify, over objection of the defendant, as follows: "I had the original of this certified copy in my possession; that paper has been lost. When I got hold of it, I had it recorded in the court-house here. I have been unable to find this paper." This evidence was objected to upon the ground that the witness was incompetent to testify as to any transaction between himself and the deceased, Maria McDonald; that it was irrelevant unless it was the deed from Maria McDonald to him, and the muniment of title upon which he sued, and as to that paper, its execution, delivery or anything else about it, he was an incompetent witness, because, if it ever existed, it was a transaction between himself and the de-

ceased, Maria McDonald. This evidence was inadmissible under the Civil Code (1910), § 5858, for the reasons assigned.

5. Movant contends that the court erred in allowing a witness, Alex. Head, to testify upon direct examination, over the objection of defendant, as follows: "I saw Sims and asked him would he buy it. I wanted to see Sims about this property. I told Sims that she wanted to get rid of the property." This evidence was objected to upon the ground that it was incompetent and irrelevant and hearsay. This evidence was not hearsay, and the witness was not incompetent to testify. Other evidence in the record showed that both of the witnesses to the execution of the deed from Maria McDonald to the plaintiff, Sims, had moved outside of the State of Georgia and were inaccessible. The proof of the execution and delivery of a deed is not confined to the subscribing witnesses. Civil Code (1910), § 5834; *DeVaughn* v. *McLeroy,* 82 *Ga.* 703 (10 S. E. 211). The existence and genuineness of a deed may be proved by circumstantial evidence. *Bentley* v. *McCall,* 119 *Ga.* 530 (46 S. E. 645). The above evidence was admissible as tending to prove the execution and delivery of the deed.

6. Movant contends that the court erred in permitting counsel for the plaintiff to ask the witness Alex. Head the question: "Did Sims and Maria make a trade?" and in receiving the witness's answer, "She told me she did." The defendant objected to the testimony on the ground that it was leading, and was incompetent to prove a trade as to land, and would not be relevant unless it was connected up with the particular deed which the plaintiff claimed to hold under, from Maria McDonald. We are of the opinion that the question asked was not leading. Neither is it objectionable on the ground that the witness would have to connect up with the particular deed which the plaintiff claimed under from Maria McDonald; but if so, when the deed was introduced this did connect it up, and the question and answer would not be objectionable for the reason assigned.

7. Movant contends that the court erred in refusing counsel the right to question and the defendant to answer as to a conversation between her and Maria McDonald, deceased, at the time Maria McDonald was alleged to be trying to get the deeds back from Sims, the defendant offering to testify that she did have a conversation with Maria McDonald to the effect that Sims had her

deed under an arrangement by which he was to pay the taxes for her on the place in controversy. This evidence was not admissible, under the Civil Code (1910), § 5858, which prohibits a person to testify in his own favor against deceased persons as to transactions or communications with such deceased persons.

8. Movant contends that the court erred in receiving in evidence, over objection of the defendant, the certified copy of the alleged deed from Maria McDonald to F. R. Sims, dated January 2, 1914, and recorded in the clerk's office of Bibb superior court. Defendant objected on the ground that the copy was not admissible until the loss of the original had been satisfactorily accounted for, which had not been done, nor had its execution been proved, and, an affidavit of forgery having been filed, the burden was upon the plaintiff to prove its execution before the certified copy was admissible. In the light of the evidence in this case the admission of the certified copy of the deed in question was not error. We think the foundation for the admission of the certified copy was sufficiently laid for the introduction of this evidence. Unquestionably, where an affidavit of forgery of a deed is filed, the burden is upon the plaintiff to prove its execution before the certified copy is admissible; but, as shown in a previous division of this opinion, the execution of a deed may be proved by circumstantial evidence as well as by witnesses to the deed. Here it is shown that these witnesses were residing outside of the State and were inaccessible, and therefore other evidence had to be resorted to in order to prove the execution of the deed. One of the witnesses for the plaintiff, Alex. Head, testified: "I know of a transaction between Sims and Maria McDonald. She went to me as a member of her church and an officer of her church. She talked to me about getting her property fixed so she could make a living out of it. She was unable them to make a living. She asked me to buy it from her. I told her I was unable. I told her that if she wanted to sell it that her pastor might buy it. She asked me if I could see him and make arrangements with him. I saw Sims and asked him would he buy it. I wanted to see Sims about this property. He asked me why I didn't buy it, and I told him I was not able. I told Sims that she wanted to get rid of the property. Maria told me that she and Sims made a trade. She first asked me if I would see Sims for her, and I told her I would; and she asked me

if I would attend to it for her, and I told her I would if she wanted me to, but it would be altogether with he and her. I saw Sims and spoke to Sims about it, and Sims said he did not know whether he wanted it or not. I told him the old lady could not support herself, and he might find out from her what he could about it. I knew when she gave the deed to it. I was to have met them here. I was too late to see the matter, but I met them coming out of the court-house. I come on up to the court-house, and Sims and she were in the hallway. I said to her, 'Am I late?' She said, 'You are a little late now, but I have got the matter fixed.' She had traded with Sims, and at the time that happened Sims was giving her some money. She told me she got $150 from Sims, and she had a paper under her arm. I saw Sims give her the money. I saw her give him the paper. She did not say whether it was a deed or not. I did not ask her. She said she was to give the deeds to him. The court-house was where I was to meet them. I do not know what she was to do at the court-house. She told me she gave him the deed." Ellen Williams testified as follows: "I knew Maria McDonald. She lived in the house that is now being sued in this case. I knew when she bought this place. She told me she sold that property. She told me she was too old to work and was going to sell her home and have money to live off of. She told me the sale was completed. She brought some money there for me to take care of for her. I do not know exactly how much. She says 'Now, you keep this money until I call for it.' After Sims finished paying her, she came there and asked me to put it away for her. She told me not to say nothing about that money. When Sims had paid her the last money she came back and asked me for the money, and said she had the last money for the house. She had give Sims a deed to the property. She said she gave Sims the deed. She said she had signed it. She said she gave him the deeds in the court-house." There was other evidence to the same effect, and we are of the opinion that there was sufficient evidence to authorize the jury to find that the deed from Maria McDonald to F. R. Sims was executed.

Judgment reversed. All the Justices concur, except Hill and Gilbert, JJ., who dissent from the rulings made in the third and fourth divisions of the opinion.