### 46526. THURMOND v. SPOON et al.

Quillian, Judge. Thomas Motley, as an employee of the City of Atlanta, was insured. According to his age and rate of employment, insurance upon his life at his death was $12,000. He died June 25, 1969. Daisy Thurmond, filed a claim against Prudential Insurance Company to recover the proceeds of the insurance policy in the Civil Court of Fulton County. Mae Belle Spoon, also filed a claim against Prudential in Fulton Superior Court to recover the proceeds of the same insurance policy. Prudential in its answer and interpleader asked that the proceeds of the insurance be paid into the registry of the court, and that the claimants establish their respective rights to the proceeds of the insurance.

The case was tried and after hearing the evidence, the court directed a verdict in favor of Mae Belle Spoon. Daisy Thurmond filed an appeal and the case is here for review. *Held:*

1. The appellant's second enumeration of error contends that the court erred in overruling the objection to a witness' testimony that Thomas Motley "signed the card which changed the beneficiary" to Mae Belle Spoon. The witness was an agent of Prudential who carried the change of beneficiary card to Motley. He testified: that he explained to him what the card was for and he appeared

to understand what he was doing; that he observed him sign the card by making his mark. The admission of the evidence was not error.

The only objection to this evidence, made at the time of the trial, was that it was inadmissible because it was an attempt to create an insurance policy orally. This objection was without merit.

2. Enumeration of error number 1 complains that the trial judge erred in allowing a witness to testify that a notation on the change of beneficiary card meant there had "been a valid change of beneficiary." Counsel objected on the grounds that "it is not testimony of fact—it is harmful and prejudicial to us, eliciting there facts from her where they were not asked for by counsel in this case." The witness' testimony was in answer to a question propounded by the court. Furthermore, there was a policy certificate introduced in evidence which provided that the change of beneficiary took place on the date the application was signed. The enumeration of error is without merit.

3. Mr. Hartupee, Prudential's agent, testified: that he carried the change of beneficiary card to Thomas Motley; that he explained to Motley what it was for and that he appeared to understand what he was doing; that he observed Motley sign the card by making his mark. Mr. Hartupee's testimony was uncontradicted and it together with the documentary evidence demanded a verdict. *National Council &c. v. Van Giesen,* 20 Ga. App. 211 (5) (92 SE 1022); *Carmichael Tile Co. v. Summitville Tiles,* 103 Ga. App. 346 (118 SE2d 869); *Cook County v. Thornhill Wagon Co.,* 189 Ga. 360 (3) (5 SE2d 881). See Civil Practice Act § 50 (a) (*Code Ann.* § 81A-150; Ga. L. 1966, pp. 609, 656; 1967, pp. 226, 237, 246, 248).

4. The remaining enumerations of error are without merit.

*Judgment affirmed. Bell, C. J., Jordan, P. J., Hall, P. J., Eberhardt, Pannell, Deen and Clark, JJ., concur. Evans, J., dissents.*

SUBMITTED SEPTEMBER 14, 1971—DECIDED MARCH 9, 1972— REHEARING DENIED MARCH 29, 1972—

Stone & Stone, Noah J. Stone, for appellant.

Frank S. French, Guy R. Dunn, for appellees.

EBERHARDT, Judge, concurring. It appears that Prudential issued to the City of Atlanta a group life insurance policy under which the city issued to its employees certificates of life insurance, and that a certificate had been issued to Thomas Motley, a city employee June 1, 1967. In June, 1969 a Mrs. Pritchard, who carried a policy with Prudential and from whom Prudential's agent, R. L. Hartupee, collected monthly premiums, informed Hartupee that Motley wanted to effect a change of beneficiary in his insurance and asked that he call on Motley and assist him. Hartupee ascertained that Motley was a city employee, insured under its group life program with Prudential, obtained from the city's group life department a form for changing the beneficiary and called on Motley at his home.

He found Motley to be in an apparent bad state of health, emaciated, and in bed. He was introduced to Motley and Motley informed him that he wished to get the beneficiary changed in his insurance to Mae Bell Spoon, his half-sister, in whose home he was living.

Hartupee produced the form, filled in the name of the proposed new beneficiary, and Motley signed it by making his mark, and Hartupee signed as a witness.

The form was not fully completed. The numbers of the group policy and certificate were not filled in, but Hartupee explained that he did not have these and that it was generally done at the city hall. The insured's name does not appear on the form, but there is no place for it except the signature line, and, as stated, this was done by mark.

Hartupee returned the form to the group life department of the city, and the administrator of the department testified that it was received. An endorsement was entered (presumably for effecting the change of beneficiary) June 16, 1969, and this was noted on the form application. Mrs. Bowen, the administrator, testified that the endorsement

was sent to Motley by interdepartmental mail to the department in which he was employed, though it does not appear that he received it. This was apparently because of the fact that he was sick and unable to appear for work.

The certificate of insurance provides, inter alia, that "The employee (insured) may at any time, without the consent of the beneficiary, change his beneficiary by filing written notice through the Policyholder (city) on a form satisfactory to Prudential. The new designation will take effect on the date the notice was signed, except that such change shall not take effect as to any amount of payment made by Prudential before receipt of notice of the change."

Was the form submitted to the city insurance department sufficient to effect a change?

In its answer to the action Prudential "admits that Thomas Motley made his mark (X) on a change of beneficiary form in the presence of Robert Hartupee, an agent of Prudential Insurance Company of America, who is the defendant in this action." It also admitted that the insurance was in force when Motley died and that Mae Bell Spoon had made demand for payment of the proceeds, and asserted that payment was withheld because of a conflicting claim by Daisy Thurmond, and interpleaded them, paying the proceeds into court.

Mr. Hartupee testified that Motley was rational when he signed the form with his mark, that he stated with clarity what he wanted to do and that he gave the information which Hartupee entered on the form—the name and address of the proposed new beneficiary.

The city group life department made no complaint as to the incompleteness of the form, or as to the signature, though there is testimony that the endorsement was held up because the signature by mark had been witnessed by only one witness.[1] An endorsement appears actually to have been made, but not delivered.

The insured was in poor physical condition. He was in

---

[1] A requirement made neither by terms of the policy, the certificate, nor the form for changing the beneficiary.

bed most of the time and had to be carried to the bathroom, though he could and did sit on the edge of the bed when Mr. Hartupee got the form filled in and signed. He could not sign his name. It is apparent that it was his intention to effect the change, and that he did all that he could do to bring that about. The city received the notice and apparently understood what was wanted, and the city was acting as Prudential's agent in handling the group life program.

Although the form was not as well completed as one would like, we believe that the proof brings the situation within the rulings made in several decisions of the Supreme Court.

In *Nally v. Nally,* 74 Ga. 669 (2a) (58 AR 458) it was held, under somewhat similar circumstances: "There is no condition in this policy requiring the consent of the beneficiary named there to a change of any of its terms or of the parties entitled to claim under it; and whether such change was to be effected by parol or in writing was a matter entirely between the assured and the company; and if the latter chose to dispense with any of the modes of effecting this purpose, this concerned no third party; nor could the company capriciously refuse the change."

If it be said that the form for effecting the change here was skimpily filled out, or incomplete, or insufficient in some respects, it does not appear that the city or Prudential has so urged. Rather, it appears that the city was willing to accept it, with the single complaint that the signature had not been witnessed by two people. It is admitted that the insured signed the form, by mark, in the presence of Prudential's agent. Consequently, it may be said that the insurer here has chosen to dispense with the requisite of a fully completed form. Since the insured could not read or write, how much more could he have done in effecting a completion of the form? The notation "End. 6/16/69" made on the application at the city hall indicates an acceptance of it in its incomplete form.

"If, however, the insured has done substantially all that is required of him, or all that he is able to do, to effect a

change of beneficiary, and all that remains to be done is ministerial action of the association, the change will take effect though the details are not completed before the death of the insured." *Smith v. Locomotive Engineers Mut. Life &c. Ins. Assn.,* 138 Ga. 717 (2) (76 SE 44).

A similar result was reached in *Barrett v. Barrett,* 173 Ga. 375 (160 SE 399, 78 ALR 962), where it was observed that the insured's "failure to comply strictly, and to the letter, with the written requirements as to a change of beneficiary were sufficiently explained and excused." We believe this is true here.

Other cases to the same effect are *West v. Pollard,* 202 Ga. 549 (43 SE2d 509); *Faircloth v. Coleman,* 211 Ga. 356 (86 SE2d 107).

EVANS, Judge, dissenting. The majority opinion affirms the trial court as to all errors enumerated and holds that the evidence demands a verdict for the appellee. I dissent.

In this case, the majority opinion of the Court of Appeals holds that a cross mark on a piece of paper is the signature of Thomas Motley, *although the name of Thomas Motley does not appear anywhere on that piece of paper.* Thus, in effect, the majority of the Court of Appeals here overrules the Supreme Court of Georgia, overlooking the rule that it is usually the other way around. The Supreme Court of Georgia, in *Horton v. Murden,* 117 Ga. 72, 74 (43 SE 786) holds: *"If the grantor's name clearly appears in the body of the instrument* . . . and [she] affixed her mark at any place thereon with the purpose of giving it such force and effect, the law will not defeat her intent and declare the instrument inoperative merely because the mark and name are not in juxtaposition." (Emphasis supplied.) Daisy Thurmond, appellant, and Mae Belle Spoon, appellee, are contesting as to which one is entitled to collect the proceeds of an insurance policy on the life of Thomas Motley, deceased. The policy named Daisy Thurmond as beneficiary, but Mae Belle Spoon contends he changed the beneficiary and named her as the one to receive the proceeds of the policy. The jury was instructed to return a verdict in favor of Mae

Belle Spoon and the judgment followed the verdict. Daisy Thurmond appeals to this court from this final judgment.

I am in sharp disagreement with the majority opinion in holding that the evidence demanded a verdict sustaining Mae Belle Spoon's contention that there was a change of beneficiary. Actually, the evidence demands a verdict in favor of Daisy Thurmond.

The law is quite clear and specific as to the way and manner in which a beneficiary may be changed in an insurance policy. In *Chance v. Simpkins,* 146 Ga. 519 (2) (91 SE 773) we find the following: "The naming of a beneficiary in an insurance policy is an integral part of the contract, and cannot be changed without a compliance with the stipulations in the policy." To the same effect see *Merchants Bank v. Garrard,* 158 Ga. 867 (3) (124 SE 715, 38 ALR 102).

Therefore, we must look to the policy of insurance in the case sub judice as to the manner pointed out in the policy for change of beneficiary. The policy provides as follows: "The employee may at any time, without the consent of his beneficiary, change his beneficiary *by filing written notice through the policyholder on a form satisfactory to Prudential. The new designation will take effect on the date the notice was signed,* except that such change shall not take effect as to any amount of payment made by Prudential before receipt of the notice of the change."

Thus, Prudential required a notice in writing as to the change, "on a form satisfactory to Prudential."

What does the evidence show in this respect?

An agent of the insurer, Mr. Hartupee, testified that he took the form to Thomas Motley shortly before Motley's death, but he also testified that he did not know Thomas Motley but was introduced to him by Mae Belle Spoon (Tr. p. 37). Of his own knowledge he did not know whether he dealt with Motley or not.

There is a significant failure of evidence on appellee's part. As to change of beneficiary, Hartupee testified that he had the insurance company's form, but it lacks a great deal of being filled out. The group policy number is not set

forth; the certificate number is not set forth; and *said writing is not signed by Thomas Motley.* R. L. Hartupee signed as an attesting witness on June 16, 1969, but what did he attest? He attested a cross mark (x) and above the cross mark is the word "his" and under the cross mark is the word "mark." Whose mark? *At no place in the purported application or notice does the name of Thomas Motley appear.* Thus, Motley simply failed to apply in writing for a change of beneficiary and the policy at the death of Thomas Motley was still payable to Daisy Thurmond. We here attach Exhibit P-1, purporting to be the written notice of change of beneficiary.

## REQUEST FOR CHANGE
## THE PRUDENTIAL INSURANCE COMPANY
## OF AMERICA
### a mutual life insurance company

The Prudential Insurance Company of America is hereby requested to make the following changes in connection with my insurance under:

Group Policy No(s). _____ Cert. No(s). _____

### CHANGE BENEFICIARY TO

Name of Proposed Beneficiary *Mae Belle Spoon*

    (Full Name—Example: Mary A. Doe, not Mrs. John J. Doe)

Residence
  of Beneficiary *241 Thornton St., S.W. Atlanta, Ga.*

       Street        Town       State

Relationship to Insured *half sister*

If more than one beneficiary is designated, settlement will be made in equal shares to such of the designated beneficiaries (or beneficiary) as survive the Insured, unless otherwise provided herein.

If no designated beneficiary survives the Insured, settlement will be made to the estate of the Insured, unless otherwise provided in the Group Policy.

Change Name of Insured from _____
END. 6-19-69 RHW          to _____

Change Name / Relationship of present Beneficiary from *X*_____
to _____

Dated *6/16* , 19*69*          *His* X
          _____
          Personal Signature of Insured
          *Mark*
Witness *R. S. Hartupee*     *City of Atlanta*
          Name of Concern Where
          Employed

ALL SIGNATURES TO BE IN INK
          Printed in U.S.A. by Prudential Press

When an illiterate person signs an instrument by making his mark, usually his name is written over or under or immediately before or immediately after the mark. But this is not absolutely essential *provided the name of the person who signs by mark elsewhere appears in the instrument.*

In *Horton v. Murden,* 117 Ga. 72, 74, supra, it is held: "If the grantor's name clearly appears in the body of the instrument, if she adopted it as her act and deed, and affixed her mark at any place thereon with the purpose of giving it such force and effect, the law will not defeat her intent and declare the instrument inoperative merely because the mark and name are not in juxtaposition."

But there is no authority that we have been able to locate which holds that a simple cross mark upon a paper, without the name of the person whose signature it represents appearing anywhere in the writing, will suffice as a signature.

Other deficiencies in the notice were that other important blanks were not filled out in the form provided by the Prudential Insurance Company of America. For instance, same

provided "change name insured from_____ to _____." These blanks were not filled in. The notice further provided, "change name of present beneficiary from _____ to _____." This blank is not filled out except an X or cross mark follows the word "from," and the witness testified that this mark was not made by him.

Nor does the testimony of the administrator of the records for the City of Atlanta for the benefit of the insurance company that, "a valid change of beneficiary has been made" make this instrument into a valid change of beneficiary. This witness testified that this paper came to her through channels of the City and her testimony shows she has no knowledge that it was to be placed in the deceased employee's record. While she testified that the City of Atlanta, through her office, was authorized by the insurance company to handle administration of these papers in regards to the insurance, nevertheless, this instrument does not show a valid change of beneficiary. Accordingly, since Daisy Thurmond was admittedly the beneficiary before the alleged change, it is my opinion that the evidence submitted demands a finding in favor of Daisy Thurmond, the appellant, since no valid change of beneficiary has been shown.

We repeat that the evidence demanded a finding in favor of Daisy Thurmond, the appellant.

Judge Eberhardt's concurring opinion cites the following authorities, to wit: *Nally v. Nally,* 74 Ga. 669 (58 AR 458); *Smith v. Locomotive Engineers Mut. Life &c. Ins. Assn.,* 138 Ga. 717 (76 SE 44); *Barrett v. Barrett,* 173 Ga. 375, 386 (160 SE 399); *West v. Pollard,* 202 Ga. 549 (43 SE2d 509); *Faircloth v. Coleman,* 211 Ga. 356 (86 SE2d 107). None of these authorities deals with the question of whether or not a cross mark on a piece of paper will serve as a signature where the name of the person whose signature is thus purported to be affixed appears nowhere on the paper. That is the principal question involved in this case.