## 46934. KOHLMEYER & COMPANY v. BOWEN.

EBERHARDT, Presiding Judge. Kohlmeyer & Company, a dealer in securities, brought suit against James Bowen, alleging that on March 20, 1970, Bowen telephoned Kohlmeyer and inquired about the purchase of tax-exempt bonds for his account, as a result of which Bowen orally agreed to purchase $80,000 face amount of Atlanta Airport revenue bonds due January 1993, and bearing interest at 7¼% per annum, on a basis to yield 7.15% when, as, and if the bonds were issued. On the same date Kohlmeyer transmitted to Bowen a "when issued" confirmation and statement of the transaction; and, on April 21, when the bonds were validated and issued and thus became available on a regular transaction basis, Kohlmeyer sent to Bowen another confirmation and statement of the transaction. When Bowen refused to go through with the purchase, Kohlmeyer, after notice to Bowen, sold the bonds which it had purchased for his account at a net loss of $4,642.80.

Bowen answered, *admitting that he orally agreed to purchase $80,000 face amount of the described bonds for a yield of 7.15% when, as, and if issued,* and agreed to pay for the bonds upon delivery, but alleging that it was represented to him that he would be entitled to interest accruing on the bonds after March 20. He also alleged that the confirmation statements failed to meet the applicable Statute of Frauds, UCC § 8-319 (*Code Ann.* § 109A-8—319).

The case was tried before the court without a jury and, at the close of Kohlmeyer's evidence, the court rendered judgment for Bowen on the basis that the Statute of Frauds had not been complied with. Kohlmeyer appeals. *Held:*

1. Bowen contended below, and now here, that Kohlmeyer had failed to establish its damages since the only evidence as to the price obtained upon Kohlmeyer's sale of the bonds for Bowen's account was contained in a confirmation statement which was excluded from evidence. However, Kohlmeyer's exhibit #8, a statement sent to Bowen of his account, shows that the bonds were sold for $78,169.73 at a loss of $4,642.80. There is ample evidence that this price was obtained as a result of competitive bidding, and we find no merit in Bowen's damages contention.

2. UCC § 8-319 (*Code Ann.* § 109A-8—319) provides that "A contract for the sale of securities is not enforceable by way of action or defense unless (a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or . . . (c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt." Since the evidence is clear that Bowen did not object in writing to the confirmation statement until May 7, more than ten days after the April 21 confirmation statement which Bowen admits receiving, the issues with respect to subsection (c) of the Statute of Frauds are whether the confirmation statements were "signed" by Kohlmeyer within the meaning of the UCC, whether either of the statements was sufficient to indicate that a contract had been made for the sale of a stated quantity of described securities at a defined or

stated price, and whether the confirmation statements were received by Bowen within a reasonable time.[1]

The first question with which we must deal is whether either of the writings was sufficient to deprive Bowen of the absolute defense of the Statute of Frauds.

(a) The confirmation statement of April 21 showed that Bowen bought $80,000 face amount of Atlanta Airport revenue bonds bearing interest at 7.25% per annum maturing January, 1993, on a purchase price basis to earn a yield of 7.15%. The "price" is further stated as a percentage of face value required to earn the agreed-upon yield of 7.15% (101.099%), and it is also stated as a "Principal amount" ($80,879.20—or $80,000 x 101.099%). The statement shows the "due date," or date on which payment and delivery were due, as May 1, 1970, plus the interest proration owed by Bowen for the period between January 1, 1970, the date of the bonds when interest commenced to accrue, and the due date of May 1.[2] Hence the requirement of *Code Ann.* § 109A-8—319 (a) that there be a contract for the sale of "a stated quantity of described securities at a defined or stated price" is clearly met by the April 21 confirmation statement. There is no uncertainty as to the contract terms and conditions which cannot be made certain from those stated, or from those which are admitted. See *Dorsey v. Clements,* 202 Ga. 820, 824 (44 SE2d 783, 173 ALR 509).

(b) The information supplied by the April 21 statement with regard to accrued interest and "price" or "principal amount" could only be determined from the "due date" which, barring advance payment by Bowen, was in turn

---

[1]Kohlmeyer was acting as principal, not as Bowen's agent, and it is agreed that UCC § 8-319 is applicable.

[2]On July 1, 1970, when the first interest coupon was redeemable, Bowen would receive intertest accrued from January 1 to July 1 and thus would recoup the interest proration paid to Kohlmeyer for the period of time it owned the bonds.

dependent upon when the bonds were issued. "The fact that the price of goods sold and delivered was to be ascertained subsequently, by the condition of the market within a specified time at a particular place, does not affect the validity or completeness of the sale, unless for some reason the ascertainment by the terms of the contract becomes impossible." *Allen v. Sams,* 31 Ga. App. 405 (2) (120 SE 808). See also *Barrow County Cotton Mills v. Sams,* 48 Ga. App. 357 (1) (172 SE 820). "The fact that the price is to be ascertained by a method which is certain and exact subsequently to the contract does not affect the validity or completeness of the sale . . ." *Comstock v. Tarbush,* 73 Ga. App. 724, 726 (37 SE2d 925). Since Bowen admits he purchased the 7.25% bonds on a "when, as, and if issued" basis to yield 7.15%, and the bonds were not issued until April 21, 1970, we hold that the April 21 confirmation statement, which Bowen admits receiving, was, as a matter of law, received "within a reasonable time" as required by UCC § 8-319 (c) (*Code Ann.* § 109A-8—319 (c)).

(c) Another question is whether the confirmation statement was "signed" by Kohlmeyer within the meaning of the UCC. "'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing." UCC § 1-201 (39) (*Code Ann.* § 109A-1—201 (39)). "The inclusion of authentication in the definition of 'signed' is to make clear that as the term is used in this Act a complete signature is not necessary. *Authentication may be printed,* stamped or written; it may be by initials or by thumbprint. *It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead.* No catalog of possible authentications can be complete and *the court must use common sense and commercial experience in passing upon these matters.* The question always is whether the symbol was executed *or adopted* by the party *with present intention to authenticate* the writing." UCC § 1-201, Comment 39, 1962 Official Text. (Emphasis supplied). In conformity with the

spirit behind the broad definition of "signed," the courts have looked to the writing as well as to the attendant circumstances to determine whether the symbol was executed or adopted by the party with present intention to authenticate, and in the great majority of cases the requisite intent has been found notwithstanding the fact that irregularities appeared on the writings or the niceties and formalities of manual signatures were lacking. See, e.g., Reich v. Helen Harper, Inc., 3 UCC Reporting Service 1048 (Civil Court NYC); Associated Hardware Supply Co. v. Big Wheel Distr. Co., 355 F2d 114, 118 (1, 2) (3d Cir.); Benedict v. Lebowitz, 346 F2d 120 (2d Cir.); In re Colorado Mercantile Co., 299 FSupp 55 (D.C. Colo.); Plemens v. Didde-Glaser, Inc., 244 Md. 556 (224 A2d 464); In re Excel Stores, Inc., 341 F2d 961 (2d Cir.); Southwest Eng. Co. v. Martin Tractor Co., 205 Kan. 684 (473 P2d 18); In re Bengston, 3 UCC Reporting Service 283, 288 (D.C. Conn.); In re Horvath, 1 UCC Reporting Service 624 (D.C. Conn.); Annot., 30 ALR3d 9, 58 (§ 19 (b)). Compare Maine &c. Credit Union v. Atlantic Motors, 250 A2d 497 (Me.); In re Carlstrom, 3 UCC Reporting Service 766 (D.C. Me.). See also Calaway v. Admiral Credit Corp., 407 F2d 518 (4th Cir.).

In the instant case the confirmation statement consists of Kohlmeyer's standard printed form with various labeled blank spaces or blocks where the appropriate information with regard to the transaction has been typed in. At the top of the form "Kohlmeyer & Co.," with its company symbol, address and other information, appears in print. No provision is made on the form for a manual signature, and there is no testimony that such confirmations are ever manually signed. Since the evidence is direct and uncontroverted that Kohlmeyer took this form, completed it with details of the account and the terms of the contract, and addressed and mailed the completed statement to Bowen, a finding would have been authorized if not demanded that Kohlmeyer adopted its printed name with present intention to authenticate the writing and

that the writing was sufficient against Kohlmeyer under UCC § 8-319 (a) (*Code Ann.* § 109A-8—319 (a)). "Paragraph (c) is particularly important in the relationship of broker (Section 8-303) and customer. Normally a great volume of such business is done over the telephone. Orders are executed almost immediately and confirmed on the same or the next business day, usually on standard forms which as to the broker more than meet the minimal requirements of paragraph (a)." UCC § 8-319, Comment 2, 1962. Official Text. All that the trial court needed to conclude that the confirmation statements were signed was evidence, direct or circumstantial, of the seller's intent that its printed name so serve. There was both direct and circumstantial evidence of it, and no evidence to the contrary.

We are not unmindful of the case of *Evans Implement Co. v. Thomas Industries,* 117 Ga. App. 279 (160 SE2d 462), but we do not regard it as being out of line with what we here hold. In the first place it is recited in the opinion that "the defendant did not raise the issue of the Statute of Frauds by pleading or by objection to the evidence." Consequently, the indication that the invoice did not meet the requirements of the statute is obiter. Secondly, there was no consideration or discussion of the matter of the seller's name on the invoice serving as a signature by intention. And thirdly, the type of transaction in that case was vastly different from that with which we deal here.

In ordinary contract situations it has long been the law of this State that whatever a maker intends as his signature is his signature and gives effect to his contract. It may be simply by the making of one's mark—usually an "X." *Horton v. Murden,* 117 Ga. 72 (1) (43 SE 786); *Thurmond v. Spoon,* 125 Ga. App. 811 (3) (189 SE2d 82), and citations. Another may sign for the maker when directed or authorized, and the signature becomes his own. *Reinhart v. Miller,* 22 Ga. 402 (68 AD 506). A signing by stencil is good if it is adopted as one's signature. *Bell*

*Bros. v. Western & A. R. Co.,* 125 Ga. 510 (2) (54 SE 532). Of course, here again, it is a matter whether the stencil signing was intended as a signature, and that must be shown. The genuineness of a signature may be shown by circumstantial evidence. *Campbell v. Sims,* 161 Ga. 517, 521 (131 SE 483); *Bentley v. McCall,* 119 Ga. 530 (2) (46 SE 645).

All of this is consistent with the specific provisions of the Uniform Commercial Code defining "signed" as including "any symbol executed or adopted by a party with present intention to authenticate a writing," *Code Ann.* § 109A-1—201 (39) and "written" or "writing" as including "printing, typewriting or any other intentional reduction to tangible form." *Code Ann.* § 109A-1—201 (46).

3. In any case, the contract was taken out of the Statute of Frauds by Bowen's admission in his answer of the contract of purchase and the purchase price, or the basis on which the purchase price could be ascertained. UCC § 8-319 (*Code Ann.* § 109A-8—319) provides: "A contract for the sale of securities is not enforceable by way of action or defense unless . . . (d) the party against whom enforcement is sought *admits in his pleading,* testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price." Bowen admitted in his answer that he "did orally agree to purchase $80,000 face amount of bonds described [Atlanta Airport 7.25% revenue bonds due January, 1993] for a yield of 7.15% when, as and if issued and agreed to pay for the bonds upon delivery to [Bowen]." This admission was never withdrawn and meets the requirements of the statute. While the answer did not admit a "stated price," it did admit a "defined price" which could be ascertained by mathematical calculation. See *Allen v. Sams,* 31 Ga. App. 405 (2), supra; *Barrow County Cotton Mills v. Sams,* 48 Ga. App. 357 (1), supra, and *Comstock v. Tarbush,* 73 Ga. App. 724, 726, supra. There was an admission in defendant's answer of an "agreement" to sell and to buy the bonds as

"agreement" is defined in *Code Ann.* § 109A-1—201 (3), and a "contract" as defined in § 109A-1—201 (11) results when the parol evidence of the parties is considered as to the one remaining term in dispute. Although Bowen further claimed that he was entitled to interest from March 20 rather than from the "due date," there is no requirement that defendant admit the entire terms of the contract as contended for by the plaintiff but only that he admit a contract of sale of a stated quantity of described securities at a defined or stated price. This is sufficient to take the parol contract out of the statute so that it can be proven and enforced as proven. See 3 Bender's Uniform Commercial Code Service § 2.04[3], p. 2-44, and *Hale v. Higginbotham,* 228 Ga. 823, 826 (188 SE2d 515).

There is no dispute that Bowen agreed to purchase the bonds when, as and if issued at a price to yield 7.15%. The only amount in controversy is interest which accrued on the bonds between March 20 and May 1, the "due date," or $660.55.

It is conceded that the bonds were tendered by Kohlmeyer to Bowen when they were issued and ready for delivery. Parol evidence was admitted from both parties, and properly so, as to the only matter in controversy, the one term of the contract dealing with the accrued interest. A fact issue was made for the court, but it was not determined. It remains, and the court should decide from the evidence whether the contention of the plaintiff or that of the defendant is correct. In so doing the court should consider whether the contention is consistent with or repugnant to the terms of the contract which are *admitted* by both parties, and that should be adopted which is consistent with, rather than that which is repugnant (if there is a repugnancy) to the admitted terms, for it is a rule of construction that the consistent rather than the repugnant must prevail. "A proviso which is utterly repugnant to the body of the contract and irreconcilable with it, will be rejected." *Inter-Ocean Cas. Co. v. Alford,* 50 Ga. App. 260, 263 (177 SE 816).

*Judgment reversed. Bell, C. J., Hall, P. J., Pannell, Deen, Quillian and Clark, JJ., concur. Evans, J., dissents. Stolz, J., not participating.*
ARGUED MARCH 6, 1972—DECIDED JUNE 21, 1972—
REHEARING DENIED JULY 19, 1972—

*Arnall, Golden & Gregory, Alexander Cocalis, Allen I. Hirsch, Michael C. Tower,* for appellant.

*Swertfeger, Scott, Pike & Simmons, M. H. Blackshear, Jr., Davis & Stringer, Thomas O. Davis,* for appellee.

*King & Spalding, Henry Hall Ware, III, Jack H. Watson, Jr., Walter Driver, Jr.,* amicus curiae.

EVANS, Judge, dissenting. This court cannot properly affirm the trial court in the case sub judice unless we first overrule the case of *Evans Implement Co. v. Thomas Industries,* 117 Ga. App. 279 (160 SE2d 462) in which the opinion was written by Judge Hall, concurred in by Judges Bell and Quillian in 1968. Under the rule of stare decisis we are bound by this precedent. See *Fidelity-Phenix Co. v. Mauldin,* 123 Ga. App. 108, 111 (179 SE2d 525); *Croker v. Smith,* 225 Ga. 529, 531 (169 SE2d 787); *McCurry v. McCurry,* 223 Ga. 334, 335 (155 SE2d 378).

The *Evans* case, as does the case sub judice, deals with the "Statute of Frauds" provision of the Uniform Commercial Code, where the plaintiff's claim is not enforceable because *not signed by the party against whom enforcement is sought (Code Ann.* § 109A-2—201 (1); Ga. L. 1962, pp. 156, 176); and where in order to overcome this deficiency, the seller resorts to *Code Ann.* § 109A-2—201 (1, 2), supra, and sends to the purchaser a "writing sufficient to indicate that a contract for sale has been made between the parties" which is *"signed by the party."* (Emphasis supplied.) If the purchaser receives such signed writing and does not make objection thereto within ten (10) days, he is bound as if he himself had signed the original contract of sale.

In the *Evans* case, supra, this court held plaintiff's invoice unenforceable because *not signed by the seller or pur-*

*chaser.* The majority opinion seeks to brush this opinion aside with the following statement: "Evans Implement Co. . . . [supra] . . . does not require a different result, for it does not appear from that case *that the seller's name appeared on the invoice or that there was any other symbol adopted by the seller with intention to authenticate.*" (Emphasis supplied.)* The files of the *Evans* case, supra, are still in custody of the clerk of this court, and reveal that the majority opinion is incorrect, for *that the seller's name does appear on the invoice, and there was a symbol adopted by the seller with intention to authenticate.* We are setting forth next a photo-copy of the invoice in the *Evans* case.

Let it be noted that "Thomas Industries Inc. of Sheboygan, Wisc." is set forth on the statement, and a very picturesque and attractive symbol appears above that name with the letters T and I encircled by "Thomas Industries," all forming a perfect circle. The account is properly itemized, with invoice numbers, dates, etc., and shows a balance of $5,061.75. It is billed to "Evans Implement Company, 611 North Avenue, N. W., Atlanta, Georgia." But with all of these trappings, this court held it still was insufficient because *it was not signed.* How then, can this court affirm the judgment of the trial court in the case sub judice, without overruling the *Evans* case?

Upon further consideration, the majority opinion, obviously recognizing that the *Evans* case supra, must be explained before reaching the decision it has reached, now says the *Evans* case is obiter, because: (1) there the defendant did not raise the issue of Statute of Frauds by pleading or objection to the evidence; (2) there was no consideration or discussion of the seller's name on the invoice serving as signature by intention in the *Evans* case, and (3) that the *Evans* transaction was "vastly different" from the case sub judice.

---

*Note: The quoted language was in the majority opinion as originally prepared, but after this dissent was written, it was deleted.

# THOMAS INDUSTRIES INC.
### SHEBOYGAN, WISC.
### October 3, 1966

- Evans Implement Company
- 611 North Avenue N. W.
- Atlanta, Ga.

POWER SPRAYER DIVISION
SHEBOYGAN, WISC.

MOE LIGHTING FIXTURE CO.
LOS ANGELES, CALIF.

SHE-BOY HOME SAW AND TOOL CORP.
SHEBOYGAN, WISC.

SEAL CABINET DIV.
FT. ATKINSON, WIS.

EAST MT GLASS DIV.
FT. SMITH, ARK.

BENJAMIN DIV.
DES PLAINES, ILL.

| DATE | INVOICE NUMBER | CREDIT MEMO | INVOICE AMOUNT | CASH | BALANCE |
|------|----------------|-------------|----------------|------|---------|
| 10/29/65 | 33451 | | 5,155.90 | | |
| 5/17/66 | 2333 | | 5.47 | | |
| 3/15 | 9259 | | 3.47 | | |
| 6/17 | 333 | 38.51 | | | |
| 6/24 | 14364 | | 23.30 | | |
| 6/24 | 14362 | | 10.15 | | |
| 6/24 | 14363 | | 5.63 | | |
| 6/24 | 14365 | | 6.69 | | |
| 6/24 | 523 | 9.73 | | | |
| 6/24 | 432 | 6.20 | | | |
| 7/27 | 749 | 8.47 | | | |
| | | | | | 5,062.75 |

But, in this premise the majority commits serious error and is badly wrong. The holding in *Evans,* supra, was not obiter dictum. See *Rivers v. Brown,* 200 Ga. 49, 52 (36 SE2d 429); *Chandler v. Gately,* 119 Ga. App. 513 (167 SE2d 697); and especially footnote at bottom of p. 519 by Judge Eberhardt. Further, the *Evans* case *did give consideration* to the seller's name on the invoice serving as a signature by intention, by positively holding that it "was not signed by the sender so as to be sufficient against the sender and enforceable unless written notice of objections to its contents is given within 10 days after it is received." This was a positive assertion that the sender (seller) had not placed his name on the invoice in such fashion that it could be accounted as the seller's signature. Finally, as to the attempt to avoid the force of the holding in the *Evans* case by stating that "the type of transaction in that case was vastly different from that with which we deal here"—that attack on the *Evans* case is too broad and general to warrant serious comment. No specific differences are pointed out. All cases have some differences, such as the names of the parties, the date of the transaction, the county where the transaction took place; the name of the court. Here, both cases involved an *unsigned invoice and the principle of law is the same in both cases.* I repeat that under the rule of stare decisis, this court should follow its own decision in the *Evans* case, or should overrule it.

I, therefore, dissent.